# EXHIBIT A

Declaration of Kelley Groover, Senior Assistant Attorney General and Managing Attorney for the Consumer Protection Division in the Officer of the Tennessee Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEEE
KNOXVILLE DIVISION

STATES OF TENNESSEE, ALABMA, )
ARKANSAS, GEORGIA, IDAHO, INDIANA, )
IOWA, LOUISIANA, MONTANA, )
NEBRASKA, NORTH DAKOTA, OHIO, )
SOUTH CAROLINA, SOUTH DAKOTA, and )
WEST VIRGINIA, )
                                          )
    *Plaintiffs*,                   )
                                          )    Civil Action No. 25-cv-00025
v.                                        )
                                          )
U.S. DEPARTMENT OF HEALTH AND )
HUMAN SERVICES; XAVIER BECERRA, in )
his official capacity as Secretary of Health and )
Human Services; and U.S. DEPARTMENT OF )
HEALTH AND HUMAN SERVICES OFFICE )
OF CIVIL RIGHTS, )
                                          )
    *Defendants*.

## DECLARATION OF KELLEY GROOVER

Pursuant to 28 U.S.C. § 1746, I, Kelley Groover, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this declaration.

2. I serve as a Senior Assistant Attorney General and Managing Attorney for the Consumer Protection Division (CPD) in the Office of the Tennessee Attorney General. The CPD's responsibilities include conducting and supervising investigations to protect Tennessee consumers and businesses from those who engage in unfair or deceptive business practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, et seq.

1

3. As part of my responsibilities, I regularly draft and review investigative tools called Requests for Information ("RFIs") to be issued by the Attorney General, including in some instances RFIs to entities covered under the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"), seeking protected health information ("PHI") to investigate consumer protection violations. The CPD is authorized to make such requests under Tenn. Code Ann. § 47-18-106.

4. I am aware of the Department of Health and Human Services' *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32,976 (Apr. 26, 2024) (the "Final Rule"), which took effect on June 25, 2024, although compliance with the Final Rule generally was not required until December 23, 2024, *id.* at 32,976.

5. In 2024, the CPD, on behalf of the State, filed suit against a Tennessee-based fertility clinic following reports of an abrupt closure. Consumers reported being unable to contact anyone at the clinic. Some were scheduled for procedures the week of closure and could not get any answers about when they might be rescheduled, how to access their medical records and genetic specimens, whether the clinic would re-open, or how to transfer care to a new provider.

6. A preliminary investigation revealed all staff other than the owner had left the clinic. Reports from the State Health Facilities Commission raised questions about the owner's ability to properly maintain the cryogenic tanks that held hundreds of irreplaceable genetic specimens. The landlord also reported the premises being left unlocked and apparently unattended, leaving the patient records and cryogenic tanks vulnerable. In addition to fearing for the ongoing preservation of patients' specimens, these findings raised concerns about potential violations of the TCPA such as misrepresentations made to consumers about the quality of services being offered by the clinic and continuity of care. Due to these concerns, we filed a consumer protection

enforcement action in Davidson County Chancery Court seeking extraordinary relief, including the appointment of a Receiver, which was granted. In the following months, the Receiver worked in cooperation with CPD to find solutions to the most immediate patient needs—finding a clinic willing to oversee the care, inventory, and transfer of patients' specimens and medical care. These most emergent issues have mostly been resolved and our team has turned its attention to discovery in our consumer protection enforcement action.

7. The Court's order appointing the Receiver directs the Receiver to preserve the records of the fertility clinic and respond to requests for documents. The order also gives the Receiver the discretion to set the time, place, and manner of document access. The Receiver has, of course, emphasized the need to be compliant with HIPAA and not wanting to violate the law in any way. When the new regulations took effect, the Receiver informed our team that someone would need to sign the attestation the Final Rule requires in order to receive productions of documents containing patient health information. Given the nature of the business at issue, practically anything we would be requesting potentially contains PHI related to the provision of reproductive care.

8. As this was the first time we had received a request to sign such an attestation, our team consulted with our superiors about this new requirement and were informed that the Office had concerns about the legality of the Final Rule and the implications of signing the attestation, including potential criminal liability. Due to those concerns, we were instructed not to sign the attestation.

9. The records we would be seeking are vital to prosecuting the State's suit against the fertility clinic for at least two reasons.

3

10. First, patient records help us identify consumers who may have been harmed and help us gather evidence of consumers' experiences with the clinic including affirmative representations that may have proved to be false. This helps us determine what violations of law may have occurred and identify potential witnesses.

11. Second, these records are essential for effectively identifying patients who may be entitled to consumer restitution for the deceptive and unfair practices that the clinic is alleged to have carried out. We understand from speaking with the Receiver that determining amounts patients paid to the clinic (a figure important in calculating restitution) would require reviewing records that contain PHI.

12. Although our civil enforcement authority is not specific to medical providers, this is not the only instance where we have investigated an entity covered by HIPAA providing reproductive care. For example, we have previously investigated a clinic providing treatment for erectile dysfunction and other sexual difficulties in men. We continue to receive and review complaints against similar entities which would likely be covered by the Final Rule.

13. Historically speaking, the CPD has encountered investigation targets who refuse to provide information in response to a lawfully issued RFI. *See e.g., In re Wall and Associates, Inc.*, M2020-01687-COA-R3-CV, 2021 WL 5274809 (Tenn. Ct. App. Nov. 12, 2021), *In re Chicago Legal Solutions LLC*, M2020-00411-COA-R3-CV, 629 S.W.3d 124 (Tenn. Ct. App.). Enforcing an RFI through the courts is resource intensive and time consuming and can delay an investigation by months or even years. Even if the CPD seeks HIPAA covered information pursuant to an RFI and provides the requested attestation, I understand that the Final Rule empowers the recipient to decide whether ultimately to disclose the information that the CPD has requested. And, if the recipient refuses to provide the requested information notwithstanding an attestation from CPD, it

4

is my understanding that the Final Rule does not provide effective recourse for the CPD to challenge that decision.

14. Instead, the CPD likely would need to seek relief from a court of competent jurisdiction, delaying our ability to obtain relevant information to investigate possible violations of law and ultimately halt conduct that may be harming the public.

15. Thus, the Final Rule complicates my team's duty and ability to investigate unfair and deceptive business practices. Because of the Final Rule, investigating complaints against covered entities may require substantially more resources than was required prior to the Final Rule taking effect. For those reasons, the Final Rule is impacting the public health and safety of the State of Tennessee because it provides investigation targets an additional avenue through which to delay, impede, and deter viable investigations.

Date: _____

　　　　　　　　　　　　　　　　　　　　　　　/Kelley Groover
　　　　　　　　　　　　　　　　　　　　　　　Senior Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　　　　and Managing Attorney

5