# EXHIBIT F

Declaration of Marina Spahr, Director of the Medicaid Fraud Unit
in the Office of the North Dakota Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEEE
KNOXVILLE DIVISION

| | |
|---|---|
| STATES OF TENNESSEE, ALBAMA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, LOUISIANA, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, and WEST VIRGINIA,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF CIVIL RIGHTS,<br><br>*Defendants.* | Civil Action No. 25-cv-25 |

## DECLARATION OF MARINA SPAHR
## NORTH DAKOTA MEDICAID FRAUD CONTROL UNIT

Pursuant to 28 U.S.C. § 1746, I, Marina Spahr, affirm under penalty of perjury as follows:

1. I am over 18 years of age and am fully competent to make this declaration. The facts contained in this Declaration are based on my personal and professional knowledge and are true and correct to the best of my knowledge and belief.

2. I serve as Director of the Medicaid Fraud Control Unit (MFCU) in the Office of the North Dakota Attorney General. MFCU's responsibilities include conducting and supervising investigations of Medicaid provider billing fraud and patient abuse and neglect where there is a Medicaid nexus, pursuant to N.D.C.C. ch. 50-24.8.

1

3. As part of my responsibilities, I regularly review administrative subpoenas (AD SUBP) and civil investigative demands (CIDs) issued by MFCU to entities covered under the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (HIPAA), seeking protected health information (PHI) to investigate Medicaid billing fraud and patient abuse or neglect. MFCU is authorized to make such requests under 45 C.F.R. § 164.512, as MFCU is both a law enforcement and health oversight agency.

4. For example, MFCU routinely requests billing data from health plan payers to vet leads on possible Medicare billing fraud. MFCU frequently must request this information with imperfect knowledge of the possible misconduct being investigated because, before receiving the data, it is impossible to know the particulars of the investigation.

5. Indeed, obtaining medical records and PHI is crucial to the investigation and litigation of health care fraud and the abuse and neglect of patients. It is a necessary component to proving various fraudulent schemes, including improper billing of care, rendering unnecessary or excessive services, billing for services that were not rendered, and other complex fraud allegations. Acquiring medical records is also essential for substantiating claims of harm to patients in facilities that receive Medicaid funding.

6. Even after our office receives billing data, more investigation is generally required. To conduct investigations into healthcare fraud or patient abuse and neglect, it is often necessary to issue AD SUBPs and CIDs, as authorized under State law, to healthcare providers in order to obtain medical records and compare billing data with services rendered.

7. I have reviewed the Department of Health and Human Services' *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, which took effect on June 25, 2024, although

2

compliance with the Final Rule generally was not required until December 23, 2024. 89 Fed. Reg. 32,976 (Apr. 26, 2024) (the "Final Rule").

8. The Final Rule creates new restrictions on the disclosure and use of any patient information related to "reproductive health care," which it broadly defines as "health care ... that affects the health of an individual in all matters relating to the reproductive system and to its functions and processes." 45 C.F.R. § 160.103.

9. Specifically, the Final Rule prohibits covered entities from disclosing PHI to state investigators, like those in MFCU, where it will be used for any of the following activities:

> (1) To conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care.
>
> (2) To impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care.

45 C.F.R. § 164.502(a)(5)(iii)(A).

10. If the covered entity concludes that either of those conditions exist, it cannot disclose the requested information if it "reasonably determine[s]" that the "reproductive health care" is either (1) "lawful under the law of the state in which such health care is provided under the circumstances in which it is provided," or (2) "protected, required, or authorized by Federal law, including the United States Constitution, under the circumstances in which such health care is provided, regardless of the state in which it is provided." *Id.* § 164.502(a)(5)(iii)(B).

11. To make that assessment, the Final Rule creates a presumption that "reproductive health care" is lawful—and not subject to investigation by a State—unless the covered entity has:

> (1) Actual knowledge that the reproductive health care was not lawful under the circumstances in which it was provided[, or];
>
> (2) Factual information supplied by the person requesting the use or disclosure of protected health information that demonstrates a substantial factual basis that the reproductive health care was not

3

lawful under the specific circumstances in which it was provided.

*Id.* § 164.502(a)(5)(iii)(C).

12. The covered entity that receives a request for PHI itself makes these determinations. And if the covered entity determines that any of the conditions barring disclosure exist, it may deny the request. The Final Rule does not expressly provide recourse for the requesting entity.

13. Under the Final Rule, covered entities also must require attestations with any request for PHI that is potentially related to "reproductive health care" data. *Id.* § 164.509(a). Such attestations are required under the Final Rule even when regulatory conditions on disclosures for law enforcement purposes are otherwise met. *See id.* § 164.512(f)(1)-(6)

14. Again, the Final Rule places the power to assess the lawfulness or validity of any PHI request with the covered entity to which the request is made. So, even after making an attestation, it does not necessarily follow they will produce the requested information, as the discretion of whether to disclose the PHI remains with the covered entity. The Final Rule thus creates the situation where entities being investigated for fraud or patient abuse and neglect will have a veto on investigators' ability to obtain records necessary for their investigation.

15. MFCU has had to expend significant time and resources to determine how to comply with the Final Rule's attestation requirements because they are vague and overbroad. The Final Rule requires MFCU investigators to attest, upon pain of criminal penalty, to facts that are difficult or impossible to know at the preliminary stages of an investigation. And if MFCU investigators have imperfect knowledge of an investigation such that they are unable to attest to the facts required under the Final Rule, they cannot meaningfully conduct investigations.

16. The Final Rule is also actively making it difficult to make data requests that are necessary to effectively investigate Medicaid fraud and patient abuse and neglect. At this point in

4

Case 3:25-cv-00025-KAC-JEM    Document 26-6    Filed 02/07/25    Page 5 of 7
PageID #: 369

time, MFCU has determined that its investigators cannot truthfully fulfill the attestation requirement that is mandated by the Final Rule because it cannot predict the ways in which any information relating to potential criminal conduct may be used, especially considering the Final Rule's expansive definition of "reproductive health care." Consequently, when covered entities refuse to provide the requested health information, MFCU will be obligated to initiate an enforcement action. The necessity of bringing such enforcement actions considerably increases the time and expense for investigations, and it also threatens to permit wrongdoers to evade liability for fraud or patient abuse and neglect where there may be statute of limitations concerns.

17. MFCU has also learned from other state agencies that covered entities have refused to disclose information without an attestation required by the Final Rule even in cases that are far afield from "reproductive health care." We expect similar obstacles to MFCU investigations.

18. Because the Final Rule itself provides no recourse to contest a demand that is denied, MFCU will likely need to seek relief in court. Such lawsuits have the potential to sprawl into protracted and complicated litigation, before MFCU will have been able to conduct an initial investigation into potential fraud. Such lawsuits may also require MFCU to demonstrate in open court its theory of the case for ongoing investigations, thereby permitting entities under investigation with an opportunity to obfuscate information. Additionally, enforcement actions required to obtain records that were not provided by covered entities will result in a significant allocation of additional resources, adding excessive costs to investigations. And while MFCU anticipates that approximately seventy-five percent (75%) of those additional costs will be borne by federal funding that is provided to MFCU for its operational expenses, the other twenty-five percent (25%) of those additional costs will be borne by the State and its taxpayers.

19. The Final Rule is complicating MFCU's duty and ability to investigate Medicaid fraud. And because of the Final Rule, fraud and patient abuse and neglect investigations that MFCU is undertaking are consuming more resources than they did before the Final Rule's effective date. The Final Rule is also likely to distort MFCU's investigative decisions and priorities going forward.

20. In short, the Final Rule is impacting the public health and safety of the State of North Dakota because it is delaying, impeding, and deterring viable fraud and patient abuse and neglect investigations.

Executed in Bismarck, North Dakota, on February 3, 2025.

Marina Spahr
Director/Assistant Attorney General
North Dakota Medicaid Fraud Control Unit