# EXHIBIT G

Declaration of Brannon Traxler, Deputy Director of Health Promotion and Services and Chief Medical Officer at the South Carolina Department of Public Health

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEEE
KNOXVILLE DIVISION

STATES OF TENNESSEE, ALABAMA, )
ARKANSAS, GEORGIA, IDAHO, INDIANA, )
IOWA, LOUISIANA, MONTANA, )
NEBRASKA, NORTH DAKOTA, OHIO, )
SOUTH CAROLINA, SOUTH DAKOTA, and )
WEST VIRGINIA, )
)
    *Plaintiffs,* )
) Civil Action No. 25-cv-25
v. )
)
U.S. DEPARTMENT OF HEALTH AND )
HUMAN SERVICES; XAVIER BECERRA, in )
his official capacity as Secretary of Health and )
Human Services; and U.S. DEPARTMENT OF )
HEALTH AND HUMAN SERVICES OFFICE )
OF CIVIL RIGHTS, )
)
    *Defendants.* )

## DECLARATION OF L. BRANNON TRAXLER, MD, MPH

Pursuant to 28 U.S.C. § 1746, I, Brannon Traxler, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this declaration.

2. I serve as the Deputy Director of Health Promotion and Services and Chief Medical Officer at the South Carolina Department of Public Health ("DPH"). The DPH is the sole advisor of the State of South Carolina in all questions involving the protection of the public health and shall investigate the causes, character, and means of preventing the epidemic and endemic diseases as the State is liable to suffer from. *See* S.C. Code Ann. § 44-1-110. Moreover, DPH has full access to any medical records and record systems maintained by physicians, hospitals, and other

Page 1 of 7

health facilities to carry out its investigations. *See* S.C. Code Ann. § 44-1-110. The sharing of information on reportable conditions is necessary for the prevention of public health emergencies, and access to that information is restricted to authorized personnel only and must comply with all state and federal health information privacy laws. *See* S.C. Code Ann. § 44-1-80(B)(2), (3).

3. As part of the agency's responsibilities, staff and I regularly review requests for medical records and information issued by the DPH to entities covered under the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (HIPAA), seeking protected health information (PHI) to investigate causes of epidemic or endemic diseases. DPH is considered a public health authority under 45 C.F.R. § 164.512(B)(i) and is authorized by law to collect or receive such information from covered entities without patient consent for the purpose of preventing or controlling disease, injury, or disability. Moreover, having full access to medical records is necessary to investigate the causes, character, and means of preventing the spread of infectious disease and avoiding a public health emergency. *See* S.C. Code Ann. § 44-1-80(B)(3) and § 44-1-110.

4. Additionally, DPH accesses medical records for non-communicable diseases. DPH staff regularly access medical records for the Violent Death Reporting System, the State Unintentional Drug Overdose Reporting System, as part of the Opioid Emergency Response Team, the Childhood Lead Poisoning Prevention Program, the South Carolina Cancer Registry, the Children and Youth with Special Health Care Needs Program, the Newborn Metabolic Screening Program, the Birth Defects Registry, the MD STARnet Registry, and the South Carolina Maternal Morbidity and Mortality Review Committee.

5. Furthermore, DPH routinely requests access to medical records, tumor registries, and other special disease record systems maintained by physicians, hospitals and other health

facilities. This data is used to identify the origins of communicable diseases or other public health issues in South Carolina. The agency must frequently request this information with imperfect knowledge of the possible circumstances of the disease or condition being investigated because, before receiving the data, it is impossible to know the particulars of any specific case.

6. Indeed, obtaining medical records and protected health information (PHI) is crucial to the investigation of disease and preservation of public health. It is a necessary component to ensuring that South Carolinians are safe and healthy.

7. Even after our office receives sensitive medical records, more investigation is generally required. To conduct investigations into origins of a communicable illness, it is necessary to issue additional records requests, authorized under state law, to healthcare providers.

8. I have reviewed the Department of Health and Human Services' *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32976 (Apr. 26, 2024) (the "Final Rule"), which took effect on June 25, 2024, although compliance with the Final Rule generally was not required until December 23, 2024, *id.* at 32976.

9. The Final Rule has created compliance costs and barriers to investigation, impeding our ability to investigate origins and sources of communicable diseases in South Carolina.

10. Promulgated in response to the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), the Final Rule places limits on the disclosure and use of patient information "potentially related to reproductive health care," which it broadly defines as "health care … that affects the health of an individual in all matters relating to the reproductive system and to its functions and processes," 45 C.F.R. § 160.103.

11. Specifically, the Final Rule prohibits covered entities from disclosing PHI where it will be used for any of the following activities:

Page 3 of 7

(1) To conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care.

(2) To impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care.

(3) To identify any person for [the purpose of conducting such investigation or imposing such liability].

45 C.F.R. § 164.502(a)(5)(iii)(A).

12. If the covered entity concludes that one of these three conditions exists, it cannot disclose the requested information if it "reasonably determine[s]" that one or more of the following conditions exists: (1) the "reproductive health care" is "lawful under the law of the state in which such health care is provided under the circumstances in which it is provided;" (2) the "reproductive health care" is "protected, required, or authorized by Federal law, including the United States Constitution, under the circumstances in which such health care is provided, regardless of the state in which it is provided;" And (3) the "reproductive health care" was provided by a person other than the covered health care provider, health plan, or health care clearinghouse (or business associates) that receives the request for PHI. *Id.* § 164.502(a)(5)(iii)(B).

13. In making that assessment, the Final Rule creates a presumption that the reproductive health care provided is lawful under (a)(5)(iii)(B)(1) or (2)—and so not subject to investigation by a State—unless the covered entity or business associate has either:

(1) Actual knowledge that the reproductive health care was not lawful under the circumstances in which it was provided[, or];

(2) Factual information supplied by the person requesting the use or disclosure of protected health information that demonstrates a substantial factual basis that the reproductive health care was not lawful under the specific circumstances in which it was provided.

Case 3:25-cv-00025-KAC-JEM    Document 26-7    Filed 02/07/25    Page 5 of 8
PageID #: 376

*Id.* § 164.502(a)(5)(iii)(C).

14. The covered entity that receives a request for PHI itself makes these determinations—including legal assessments of state and federal laws. And if the covered entity determines that any of the conditions barring disclosure exist, it may deny the request. The Final Rule does not provide explicit recourse for the requesting entity.

15. Under the Final Rule, covered entities also must require attestations with a request for PHI that is "potentially related to reproductive health care" data. *Id.* § 164.509(a). Attestations are required prior to disclosure when the purpose of the request includes health oversight activities, judicial or administrative proceedings, law enforcement, or disclosures to coroners and medical examiners. *See* 45 C.F.R. §164.509(a)(1). Not included in this attestation requirement is section 164.512(b)(1)(i), which allows a covered entity to disclose PHI without consent to a public health authority authorized by law to collect or receive such information.

16. Again, the Final Rule places the power to assess the lawfulness or validity of any PHI request entirely with the covered entity to which the request is made. So, even after making an attestation it does not necessarily follow that the requesting party will receive the requested information, as discretion whether to disclose the PHI remains with the covered entity.

17. My agency has had to expend significant time and resources to determine how to comply with the Final Rule's attestation requirements because they are vague and broad. The Final Rule requires members of the agency's Communicable Disease Epidemiology Section, among others, to attest, upon pain of criminal penalty, to facts that are difficult or impossible to know at the preliminary stages of an investigation and which is not required due to HIPAA's public health exception.

18. And given the criminal liability associated with HIPAA violations, my team has and will continue to have to consult extensively with our legal advisors to determine how, if possible, to comply with the Final Rule's attestation requirements without triggering potential criminal liability.

19. In addition to these compliance costs, the Final Rule is actively making it difficult or impossible to make data requests necessary to promote and protect South Carolina's public health. We have received communications from hospitals and other health care providers indicating their intention to require public health epidemiologists to sign the Final Rule's attestation, despite the fact that it does not apply to our inquiries and falls within HIPAA's public health exception. Consequently, we are developing communications to share with hospitals and health care providers to educate them on the Final Rule's applicability or, in the context of public health, its lack thereof. These efforts require staff to take time away from disease investigation activities.

20. In addition, our agency provides health care services that are HIPAA-covered, and those programs receive requests for records. We must now expend time, energy, and resources, updating the forms, policies, and trainings of our health care services programs in order to comply with the Final Rule.

21. Ultimately, the Final Rule is complicating the agency's duty and ability to detect and investigate reportable illnesses or suspicious events that could evolve into a public health emergency as well as providing consistent and efficient health care services to South Carolinians. Because of the Final Rule, investigations that we are undertaking, and services that we are providing, are consuming more resources than they did before the Final Rule's effective date. And the Final Rule is impacting strategic investigative decisions. For those reasons, the Final Rule is

impacting the public health and safety of the State of South Carolina because it is delaying, impeding, and deterring time-sensitive investigations.

I declare under penalty of perjury that the foregoing is true and correct.

*[signature]*
L. Brannon Traxler, MD, MPH
Deputy Director of Health Promotion &
Services and Chief Medical Officer

Executed on 31st day of January, 2025.