# EXHIBIT I

Declaration of Ashley A. Klenski, Director of the Medicaid Fraud Control Unit in the Criminal Law Division within the Office of the Idaho Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEEE
KNOXVILLE DIVISION

| | |
|---|---|
| STATES OF TENNESSEE, ALABAMA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, LOUISIANA, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, and WEST VIRGINIA,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF CIVIL RIGHTS,<br><br>*Defendants*. | Civil Action No. 25-cv-25 |

## DECLARATION OF ASHLEY A. KLENSKI

Pursuant to 28 U.S.C. § 1746, I, Ashley A Klenski, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this declaration.

2. I serve as the Director of the Medicaid Fraud Control Unit (MFCU) in the Criminal Law Division within the Office of the Idaho Attorney General. The MFCU's responsibilities include conducting Medicaid Fraud investigations pursuant to Idaho Code § 56-226.

3. As part of my responsibilities, I regularly review requests for Medicaid provider records issued by the MFCU team to entities covered under the Health Insurance Portability and

1

Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (HIPAA), seeking protected health information (PHI) to investigate Medicaid fraud. MFCU is authorized to make such requests under 45 C.F.R. § 164.512.

4. For example, MFCU routinely requests billing data from health plan payers, such as health insurers or Idaho Department of Health and Welfare, Idaho's Medicaid program. This data is used to vet leads on possible violations of Idaho Code § 56-227A. I frequently must request this information with imperfect knowledge of the possible misconduct being investigated because, before receiving the data, it is impossible to know the particulars of the investigation.

5. Indeed, obtaining medical records and PHI is crucial to the investigation of health care fraud. It is a necessary component to proving various fraud schemes, including improper billing of care, rendering unnecessary or excessive services, billing for services that were not rendered, and other complex allegations.

6. Even after our office receives billing data, more investigation is generally required. To conduct investigations into healthcare fraud, it is necessary to issue written requests for records, authorized under state law, to healthcare providers in order to obtain medical records and compare billing data with services rendered, as reflected in the medical records.

7. I have reviewed the Department of Health and Human Services' *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32,976 (Apr. 26, 2024) (the "Final Rule"), which took effect on June 25, 2024, although compliance with the Final Rule generally was not required until December 23, 2024, *id.* at 32,976.

8. The Final Rule has created additional compliance costs and barriers to investigation which have the potential of impeding our investigations of healthcare fraud in Idaho.

9. Promulgated in response to the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), the Final Rule places limits on the disclosure and use of patient information related to "reproductive health care," which it broadly defines as "health care … that affects the health of an individual in all matters relating to the reproductive system and to its functions and processes," 45 C.F.R. § 160.103.

10. Specifically, the Final Rule prohibits covered entities from disclosing PHI where it will be used for any of the following activities:

> (1) To conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care.
>
> (2) To impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care.

45 C.F.R. § 164.502(a)(5)(iii)(A).

11. If the covered entity concludes that one of these two conditions exists, it cannot disclose the requested information if it "reasonably determine[s]" that the "reproductive health care," at issue is either (1) "lawful under the law of the state in which such health care is provided under the circumstances in which it is provided," or (2) "protected, required, or authorized by Federal law, including the United States Constitution, under the circumstances in which such health care is provided, regardless of the state in which it is provided." *Id.* § 164.502(a)(5)(iii)(B).

12. In making that assessment, the Final Rule creates a presumption that reproductive health care provided by another person is lawful under (a)(5)(iii)(B)(1) or (2)—and so not subject to investigation by a State—unless the covered entity or business associate has either:

> (1) Actual knowledge that the reproductive health care was not lawful under the circumstances in which it was provided[, or];
>
> (2) Factual information supplied by the person requesting the use or disclosure of protected health information that demonstrates a substantial factual basis that the reproductive health care was not

3

Case 3:25-cv-00025-KAC-JEM    Document 26-9    Filed 02/07/25    Page 4 of 6
PageID #: 393

> lawful under the specific circumstances in which it was provided.

*Id.* § 164.502(a)(5)(iii)(C).

13. The covered entity that receives a request for PHI itself makes these determinations—including legal assessments of state and federal laws. And if the covered entity determines that any of the conditions barring disclosure exist, it may deny the request. The Final Rule does not provide explicit recourse for the requesting entity.

14. Under the Final Rule, covered entities also must require attestations with a request for PHI that is potentially related to "reproductive health care" data. *Id.* § 164.509(a). Such attestations are required under the Final Rule even when regulatory conditions on disclosures for law enforcement purposes are otherwise met. *See id.*; *id.* § 164.512(f)(1)-(6)

15. Again, the Final Rule places the power to assess the lawfulness or validity of any PHI request entirely with the covered entity to which the request is made. So, even after making an attestation it does not necessarily follow that the requesting party will receive the requested information, as discretion whether to disclose the PHI remains with the covered entity. This means that in some cases the entity under investigation for fraud will have a veto on investigators' ability to obtain records necessary for their investigation.

16. My office has had to expend time and resources to determine how to comply with the Final Rule's attestation requirements because they are vague and overbroad. The Final Rule may require me and the MFCU in some cases to attest, upon pain of criminal penalty, to facts that are difficult or impossible to know at the preliminary stages of an investigation.

17. And given the criminal liability associated with HIPAA violations, my team will have to consult extensively with other divisions within the Attorney General's office to determine

4

Case 3:25-cv-00025-KAC-JEM   Document 26-9   Filed 02/07/25   Page 5 of 6
PageID #: 394

how, if possible, to comply with the Final Rule's attestation requirements without triggering potential criminal liability.

18. We have also learned from other state agencies that covered entities have refused to disclose information without an attestation required by the Final Rule even in cases that are far afield from "reproductive health care." We expect similar obstacles to our MFCU investigations.

19. Because the Final Rule itself provides no recourse to contest a demand that is denied, my office will likely need to seek relief in a court of competent jurisdiction. Such a suit has the potential to sprawl into protracted and complicated litigation, giving rise to issues such as federal preemption and removal. And such a suit may require MFCU to demonstrate in open court the theory of the case we are investigating without having adequate knowledge to do so. Any protracted litigation may impact on the amount of money the State may recoup from a viable fraud investigation because it may push some fraudulent activity outside of the relevant statute of limitations.

20. Ultimately, the Final Rule has the potential to complicate my team's duty and ability to investigate Medicaid fraud. And the Final Rule could impact our strategic investigative decisions. For those reasons, the Final Rule is impacting the public health and safety of the State of Idaho because it may delay, imped, and deter viable fraud investigations.

By: *[signature]*     Dated: 2/4/2025
Ashley Klenski, Director
Medicaid Fraud Control Unit
Office of the Attorney General