# EXHIBIT K

Declaration of Nicholas J. Dietz, Louisiana Department of Health Medicaid Program Integrity Section Chief

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEEE
KNOXVILLE DIVISION

STATES OF TENNESSEE, ALABAMA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, LOUISIANA, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, and WEST VIRGINIA,

    *Plaintiffs*,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF CIVIL RIGHTS,

    *Defendants*.

Civil Action No. 25-cv-25

## DECLARATION OF NICHOLAS J. DIEZ, ESQ.

Pursuant to 28. U.S.C. §1746, I, Nicholas J. Diez, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this declaration.

2. I serve as the Louisiana Department of Health (LDH) Medicaid Program Integrity Section Chief. The Program Integrity Section exercises health oversight functions over persons and entities participating in the Louisiana Medicaid program, including healthcare providers enrolled with the Medicaid program and the Medicaid Managed Care Organizations (MCOs) that LDH has contracted with to administer the benefits provided to Louisiana Medicaid beneficiaries.

1

3. Pursuant to LSA - R.S. 36:254, LDH serves as the State Medicaid Agency (SMA) to coordinate with the federal government in the administration of the State's Medicaid program created under Title XIX of the Social Security Act.

4. Federal regulation requires LDH, as the SMA, to:
   (1) have methods and criteria for identifying suspected fraud cases and procedures for referring those cases to law enforcement officials;
   (2) to conduct preliminary investigations to determine whether a full investigation is warranted;
   (3) when warranted, conduct a full investigation until the matter is resolved through litigation or the matter is dropped because of insufficient evidence; and/or
   (4) in matters where fraud is suspected refer the case to the state Medicaid Fraud Control Unit (MFCU).

42 C.F.R. 455.12 – 455.16.

5. Program Integrity's primary function is to effectuate the aforementioned regulatory requirement to identify suspected cases of fraud, open preliminary and full investigations to ensure the benefits afforded to Louisiana Medicaid beneficiaries and paid for by the Medicaid program are provided in accordance with the law, regulations and rules governing the provision of services as required by 42 C.F.R. 455.1 *et seq.*, and when necessary, refer matters of suspected fraud to appropriate law enforcement authorities including the MFCU.

6. In addition, in Louisiana the Program Integrity Section is responsible for coordinating the Federal government's Payment Error Review Methodology to determine the error rate for which Medicaid payments are made, and conducted Medicaid Eligibility Quality Control function to identify vulnerable or error-prone areas in determining an individual's eligibility for Medicaid and the Children's Health Insurance Program.

7. In furtherance of these responsibilities, Program Integrity regularly requests information, records, and data from entities covered by the Health Insurance Portability and

Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (HIPAA), including the State's contracted MCOs and Medicaid providers. Such requests are often inclusive of Protected Health Information (PHI) protected by HIPAA.

8. For example, Program Integrity regularly requests medical records from providers, either directly or through the MCOs, when conducting its investigations and audits. This information is used to determine whether the provider complied with the specific rules governing the provision of Medicaid paid services. The records may be used to support administrative sanctions assessed on providers, or, where fraud is suspected, included with a referral to the MFCU or other appropriate law enforcement entities for possible criminal or civil investigations and litigation. Federal and Louisiana law requires Medicaid providers, MCOs, and MCO subcontractors to cooperate with these investigations and audits, and to provide Program Integrity with access to any relevant records upon request. See 42 C.F.R. §§ 438.3(h), 438.230(c)(3); LSA – R.S. 46:437.12(5); LAC (Louisiana Administrative Code) 50:I.4129, 50:I.4147(A)(21).

9. I have reviewed the Department of Health and Human Services' *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32,976 (Apr. 26, 2024) (the "Final Rule"), which took effect on June 25, 2024, with a compliance deadline of December 23, 2024. Specifically, the Final Rule places limits on disclosure and use of patient information "potentially related to reproductive health care," which it broadly defines as "health care…that affects the health of an individual in all matters relating to the reproductive system and to its functions and processes, " 45 C.F.R. § 160.103.

10. The Final Rule creates unnecessary barriers to Program Integrity's oversight of the MCOs and Program Integrity's investigations and audits. It impedes Program Integrity's ability to adequately conduct reviews of Medicaid paid services and coordinate with law enforcement

3

entities for any false or fraudulent claims submitted to the Medicaid program.

11. According to the Final Rule, it specifically applies to requests for health oversight activities and covered entities are prohibited from disclosing PHI where it will be used:

> (1) To conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care;
> (2) To impose criminal, civil, or administrative liability on any person for the mere act of seeking obtaining, providing, or facilitating reproductive health care; or
> (3) To identify any person for either of the above described purposes.

45 C.F.R. § 164.502(a)(5)(iii)(A).

12. If the covered entity concludes that one of these conditions exists, it cannot disclose the requested information if it "reasonably determine[s]" that the "reproductive health care" at issue is either (1) lawful under the law of the state in which such health care is provided under the circumstances in which it is provided," or (2) "protected, required, or authorized by Federal law, including the United States Constitution, under the circumstances in which such health care is provided, regardless of the state in which it is provided." *Id.* §164.502(a)(5)(iii)(B).

13. In making that assessment, the Final Rule creates a presumption that reproductive health care provided by another person is lawful under (a)(5)(iii)(B)(1) or (2)—and so not subject to investigation by a State—unless the covered entity or business associate has either:

> (1) Actual knowledge that the reproductive health care was not lawful under the circumstances in which it was provided[, or]
> (2) Factual information supplied by the person requesting the use or disclosure of protected health information that demonstrates a substantial factual basis that the reproductive health care was not lawful under the specific circumstances in which it was provided.

*Id.* § 164.502(a)(5)(iii)(C).

14. Pursuant to the Final Rule, the covered entity to whom the request is made makes the determination, including legal assessments of state and federal law, of whether the reproductive

4

healthcare provided was lawful. If the covered entity determines that any of the conditions barring disclosure exist, it may deny the request. The Final Rule does not provide recourse for the requesting entity.

15. Additionally, the Final Rule requires the covered entity to obtain an attestation with a request for PHI for health oversight purposes (among other purposes) that is potentially related to reproductive healthcare, regardless of other HIPAA provisions applicable to such disclosures. 45 C.F.R. § 164.509(a)(1). Because the Final Rule requires a new attestation for each specific request (89 FR 33030-33031) and specifically prohibits combining the attestation with any other form (45 C.F.R. § 164.509(b)(3)), we are unable to incorporate the attestation into our standard information request. The Final Rule also requires Program Integrity staff to attest, upon pain of criminal penalty, to facts that are unknowable in the beginning stages of an investigation or audit.

16. In its commentary to the Final Rule, the U.S. Department of Health and Human Services (HHS) specifically states that an attestation is required for SMA requests. In response to a request for additional examples for when an attestation is required, HHS stated that, "a regulated entity may disclose PHI to a state Medicaid agency in accordance with 45 CFR 164.512(d) where the purpose of the request is to ensure that the regulated entity is providing the reproductive health care for which the regulated entity has submitted claims for payment to Medicaid **after obtaining an attestation that meets the requirements of 45 CFR 164.509** from the state Medicaid agency." 89 FR 33041 (emphasis added).

17. Even if an attestation is provided, the covered entity is given the discretion to determine whether the attestation is not defective and whether the conditions of disclosure are met, essentially operating as a *de facto* veto on Program Integrity's audits and investigations.

5

Case 3:25-cv-00025-KAC-JEM   Document 26-11   Filed 02/07/25   Page 6 of 7
PageID #: 406

18. Given the criminal liability associated with HIPAA violations, my team will have to consult extensively with LDH's legal counsel to determine whether it is possible to comply with the Final Rule's attestation requirements without triggering potential criminal liability.

19. The Final Rule also serves to abrogate various provisions within the MCO contracts and the State's Medicaid provider agreements that require the MCOs and Medicaid providers to provide direct access to documents related to services paid with Medicaid program funds. Because the covered entity makes the final determination as to whether the purpose of the request satisfies the conditions for production, any MCO or healthcare provider can cause unnecessary delay in our investigative actions.

20. At least one MCO in Louisiana has advised Program Integrity that it takes the position that, due to the breadth of the requirement that an attestation is required for any information request "potentially related to reproductive healthcare" almost all requests from Program Integrity will need to be accompanied by an attestation in the form required by HHS.

21. I am also aware of nine current investigations by Louisiana's MFCU that are being hindered by that same MCO's insistence on receiving an attestation before disclosing the requested records to the MFCU.

22. As a result, the Final Rule has complicated and hampered Program Integrity's ability to conduct its oversight responsibilities related to the State's Medicaid program.

_____
Nicholas J. Diez

Dated: February 5, 2025