# EXHIBIT L

Declaration of Charity Menefee, Director of the Division of Public Health for the
Nebraska Department of Health and Human Services

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

STATES OF TENNESSEE, ALABAMA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, LOUISIANA, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, and WEST VIRGINIA,

    Plaintiffs,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF CIVIL RIGHTS,

    Defendants.

Civil Action No. 25-cv-00025

## DECLARATION OF CHARITY MENEFEE

Pursuant to 28 U.S.C. § 1746, I, Charity Menefee, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this declaration.

2. I serve as the Director of the Division of Public Health ("DPH") for the Nebraska Department of Health and Human Services ("DHHS"). DHHS's mission is "Helping People Live Better Lives," and DPH furthers that goal by protecting Nebraskans in a variety of ways. This includes licensing, inspecting, and investigating health clinics and facilities to ensure they meet federal and state standards. *See* 42 C.F.R. § 482.1 *et seq.* (federal standards); Neb. Rev. Stat. §§ 71-401 to 479, §§ 81-604.01 to 604.03 (state standards). DPH also conducts inspections and

investigations into licensed health care practitioners for licensing and disciplinary purposes. *See* Neb. Rev. Stat. § 38-103 *et seq.*

3. The investigations conducted by DPH are purely administrative investigations, resulting in disciplinary actions against licenses and fines or other penalties. While information revealed in them may be referred to county attorneys or the Nebraska Attorney General for prosecution decisions, DPH is involved in neither investigating nor prosecuting criminal cases.

4. I am aware of the U.S. Department of Health and Human Service's ("US HHS") *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32,976 (Apr. 26, 2024) (the "Final Rule"), which took effect on June 25, 2024, although compliance with the Final Rule generally was not required until December 23, 2024. *Id.* at 32,976.

5. The Final Rule is currently hindering DPH's inspection and investigation of healthcare facilities. The Final Rule's unclear applicability and wording creates confusion for DPH inspectors and investigators. The Final Rule also hinders inspections and investigations through the additional time required for DPH staff to complete the Final Rule's attestation for any information being requested, and the additional review and processing time required by the facility responding to the request for information.

6. DPH inspections and investigations are centered around safety for Nebraskans. During these actions, it is critical that DPH staff be able to review records from both clinicians and providers that contain protected health information ("PHI") as defined under the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"). DPH inspections and investigations frequently involve complaints or concerns about the care provided to patients. Therefore, DPH staff must have access to full records with PHI. If a

patient complains about the care they received, a proper investigation requires detailed records of that care.

7. The Final Rule's requirements and attestation are unclear and are difficult to interpret for frontline DPH staff. They have had to spend significant time working with DHHS attorneys to determine which of the options on the attestation applies, and what information they can and cannot request based on the Final Rule.

8. The greatest source of confusion and concern is the extent to which the Final Rule limits information requested for one purpose but that after review leads investigators to require that information for another purpose. There are many instances where DPH inspections and investigations begin with a general request for information about a facility and as DPH investigates the information provided, the investigation may turn into an investigation of a credentialed provider. For example, an investigation of the general conditions of a particular clinic may lead to an investigation into an abortion that may violate Nebraska law. Neb. Const. Art. I. Sec. 31.

9. It is difficult for DPH to know at the outset of an investigation whether conduct was or was not permitted, meaning that the investigators are having to indicate on the Final Rule's model attestation form whether the information they are seeking is related to unlawful conduct before they know the answer. This causes concern and hesitation due to the potential for penalties or inability to use the information when found, and delays as staff members consider how to respond.

10. Due to the confusing wording, instructions, and rollout of the Final Rule, DPH and DHHS are also currently unaware of the extent to which they would be limited in using information obtained for investigations for which they checked the first box on the U.S. HHS provided model

attestation, but which revealed statutory or regulatory infractions that they would otherwise be able to hold a provider to.

11. This confusion is further compounded by the vague wording used, where what constitutes the "mere" act of seeking, obtaining, providing, or facilitating reproductive health is not succinctly or helpfully defined; nor does the Final Rule include an easily understood definition of what is meant by "lawful" care in the context of an administrative agency inspection or investigation and liability. *See* the Final Rule, *supra*, at 32994.

12. Additional confusion is caused by the breadth of the Final Rule, and its application to almost any facility within the State providing healthcare services of any nature. Nursing facilities within the State provide care which may be covered under the broad category of reproductive health care, but which are clearly outside of any laws the Final Rule is attempting to impact or circumvent, and yet both the facility and DHHS are required to treat their records the same as other facilities more clearly in the scope of the Final Rule.

13. DPH is one division with multiple mandates. To fulfill its mandates and the DHHS mission to protect Nebraskans, DPH staff must be able to work together effectively and efficiently. This includes the ability to use information lawfully gathered through one kind of inspection or investigation to begin another, such as when an inspection of a licensed facility leads to an investigation into and potential discipline against a licensed provider. The Final Rule's focus on the purpose of the information and the required attestations has limited this flow of information, either by siloing information based on its purpose or by creating fear and hesitation in DPH staff.

14. The final rule has thereby hindered investigations that are not related to liability for the mere act of seeking, obtaining, providing, or facilitating lawful reproductive health care or to identify a person for such purposes.

15. Further, to date, covered facilities have refused to provide DPH with the requested materials without an attestation required under the Final Rule.

16. If a facility refuses to provide requested information notwithstanding an attestation from DPH, there is currently no guidance available either to DPH or DHHS legal counsel as to what grounds DPH can proceed on.

17. This raises the concern that clinics or providers which know that they may be facing administrative or regulatory liability due to their actions may attempt to hide behind the Final Rule as a smokescreen for hiding their actions. This could additionally provide time for the spoliation of evidence, using the legal fight over the confusing and imprecise Final Rule as to whether they must provide the records as an opportunity to alter or destroy them.

18. The Final Rule has also created confusion regarding the HIPAA regulations themselves as there now appear to be two competing clauses. 45 CFR § 164.512 authorizes the disclosure of PHI when said disclosure is required by law. *See* 45 CFR § 164.512(a)(1). The Final Rule, however, has been interpreted to require the use of the new attestation form if the information sought is for covered reproductive health services, even when disclosure is already authorized under 45 CFR § 164.512. Currently DPH is unaware of any federal guidance reconciling the application of the Final Rule with other pre-existing HIPAA provisions.

19. The Final Rule has also caused DPH staff to spend less time on investigations and patient safety activities in Nebraska by requiring them to spend considerable time on complying with the Final Rule. This has led to delays in investigations. These delays have both already occurred and will continue to occur going forward.

20. In the days following the enforcement date of the rule, DPH inspectors and investigators had to spend significant time working with DHHS attorneys to understand the scope

of the rule. The lack of direction provided by the US HHS meant that DPH investigators were unable to complete two hospital complaint investigations due to the hospitals' being unwilling to provide the information. Between the two complaints, this one delay cost almost 20 hours of taxpayer funded employee time.

21. Even as DPH has operationalized the US HHS-provided attestations and has become more familiar with doing so, it still adds an estimated minimum of five minutes per form to be filled out—and that 5 minutes is only in circumstances where all of the records sought can be covered under one attestation, and the inspection or investigation does not have any additional questions or concerns about the attestation that the staff will need to work with DHHS legal counsel to answer. In 2024 DPH inspectors completed a total of 1,978 onsite surveys/inspections. Even if every matter only took five minutes to review, this would represent an additional 164.83 hours added to DPH's survey and inspection time over the course of a year, assuming that each case required the release, and that number would increase if multiple attestations were required in a single inspection, or they presented legal or administrative complexities.

22. Due to all the above, the Final Rule is making DPH's duty and ability to inspect and investigate healthcare facilities and providers substantially more difficult. Because of the Final Rule, DPH staff are spending more time at the taxpayer's expense; information is being delivered more slowly, meaning all relevant DPH activities last longer and conduct which endangers Nebraskans may continue for longer; and DPH staff are forced to consider whether they will be personally responsible or liable for violations of the law, compounding delays and causing personal distress. For all of these reasons, the Final Rule is impacting the public health and safety of the State of Nebraska because it is delaying, impeding, and deterring vital inspections investigations.

Case 3:25-cv-00025-KAC-JEM    Document 26-12    Filed 02/07/25    Page 7 of 8
PageID #: 414

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 5, 2025.

_____
Charity Menefee