# EXHIBIT N

Declaration of Jordan Stover, Assistant Commissioner, Consumer Services & Health Care Regulation, Indiana Department of Health, State of Indiana

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEEE
KNOXVILLE DIVISION

| | |
|---|---|
| STATES OF TENNESSEE, ALBAMA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, LOUISIANA, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, and WEST VIRGINIA, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF CIVIL RIGHTS, <br><br> *Defendants*. | Civil Action No. 25-cv-00025 |

## DECLARATION OF JORDAN STOVER

Pursuant to 28 U.S.C. § 1746, I, Jordan Stover, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this declaration.

2. I serve as Assistant Commissioner, Consumer Services & Health Care Regulation, Indiana Department of Health, State of Indiana. IDOH's mission is to promote, protect, and improve the health and safety of all Hoosiers. To that end, we investigate complaints regarding patient safety and facility conditions to ensure compliance with federal, *see* 42 C.F.R. § 482.1, *et seq.*, and state standards, *see* Ind. Code. 16-21-1-10; 16-21-2-2; 16-21-2-13; 16-28 *et seq.;* 16-27 *et seq*.

1

3. For example, IDOH conducts certification and compliance surveys for hospitals that participate in Medicare to ensure the facility maintains compliance with conditions of program participation and for state licensure purposes. *See* 42 C.F.R. § 489.53(a)(18) and IC 16-21-1-10; 16-21-2-2; 16-21-2-13. These surveys are often undertaken in response to a patient complaint regarding care or conditions at a particular facility. IDOH must have "immediate access" to "provider or supplier" records and facilities "for the purpose of determining" compliance. *Id.* Failure to grant such access could result in the Centers for Medicare and Medicaid Services ("CMS") "terminat[ing]" its agreement with the provider. *Id.* at § 489.53(a).

4. In conducting surveys pursuant to state and federal law, IDOH regularly requests provider records that contain protected health information ("PHI") under the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"). These requests are most often directed to the facility being surveyed, but sometimes it is necessary to request records from other providers along the patient-care chain to adequately investigate certain complaints. For example, if a patient complains that they suffered harm after being transferred to a new facility, it may be necessary to compare the patient records at prior facilities to track the diagnoses and care the patient received.

5. Because of their obligations under state and federal law, *see, e.g.*, 410 IAC § 15-1.4-1(a)(2)(B); 410 IAC § 15-2.4-1(a)(1)(B); 410 IAC § 17-10-1(k); Ind. Code § 16-28-9-3(a)(2) and (b);42 C.F.R. §§ 489.53(a)(13), 489.53(a)(18), healthcare facilities in the past immediately complied with survey requirements, including by providing requested records.

6. I am aware of the Department of Health and Human Services' *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32,976 (Apr. 26, 2024) (the "Final

2

Rule"), which took effect on June 25, 2024, although compliance with the Final Rule generally was not required until December 23, 2024, *id.* at 32,976.

7. The Final Rule is currently hindering IDOH's ability to conduct routine survey and certification work, including by delaying access to medical records during the course of facility surveys.

8. For example, IDOH has been asked to complete attestations for surveys being completed at hospitals and for records requests to hospitals for surveys at other Medicare certified facilities. IDOH has spent significant time trying to clarify that the attestation requirements do not apply to survey and certification activities because the records are "required by law" to be produced under state and federal law, and HIPAA permits these disclosures. 45 CFR § 164.512(a); 45 CFR § 164.103. Despite these communications, facilities have been resistant to produce records in numerous instances.

9. IDOH has not completed those attestations because such a requirement conflicts with IDOH's authority to "immediate access" to those materials as "required by law." 42 C.F.R. §§ 489.53(a)(13) and (a)(18); 45 CFR § 164.512(a); 45 CFR § 164.103.

10. IDOH sought clarification from CMS on this issue and was directed that surveyors are not required to sign attestations to receive records to complete survey and certification activities because the disclosure of these records is required by law.

11. The stalled surveys are dangerous to the safety and well-being of Indiana residents. Delay in patient safety related surveys can allow dangerous behaviors to continue, especially during facility suveys that involve abuse, neglect, or the provision of substandard care.

3

12. In addition to impeding IDOH's surveys, the Final Rule has imposed compliance costs, including needing to assess how, if possible, to comply with the rule's attestation requirement.

13. If a facility refuses to provide requested information without an attestation from IDOH, the potential remedies are litigation, the termination of a facility's Medicare or Medicaid certification, or state licensure revocation. The latter two remedies would, in most cases, have the effect of closing the affected health care facility.

14. Thus, the Final Rule is complicating IDOH's duty and ability to investigate healthcare facilities for violations of state and federal laws. Because of the Final Rule, surveys that IDOH is undertaking are consuming more resources than they did before the Final Rule's effective date. And the Final Rule is actively thwarting time-sensitive surveys. For those reasons, the Final Rule is impacting the public health and safety of the State of Indiana because it is delaying, impeding, and deterring viable surveys.

15. IDOH's fatality review teams have also faced investigation-limiting roadblocks because of this rule. State and local fatality review teams are tasked with studying certain deaths involving infants, children, women around the time of pregnancy, and those that have died from suicide or overdose. Ind. Code §§16-49-3-3; 16-49-3-6; 16-49-4-4; 16-49-6-4; 16-49.5-2-6; 16-50-1-7. Fatality review teams use the individual investigations to create statistical reports each year with recommendations to prevent future deaths. Ind. Code §§ 16-49-3-7; 16-49-4-11; 16-49-6-8; 16-49.5-2-14; 16-50-1-9. State law requires certain health care providers to provide medical records to the fatality review teams. Ind. Code §§ 16-49-3-5; 16-49-4-5; 16-49-6-6; 16-49.5-2-8; 16-50-1-8.

16. Fatality review teams perform public health surveillance activities pursuant to 45 C.F.R. §164.512(b), which do not require an attestation pursuant to 45 C.F.R. §164.509.

17. Facilities have asked fatality review teams to sign the attestations prior to releasing the records as required by law. IDOH had to create a general guidance document for facilities before they would provide access to the records. This has delayed access and caused confusion for the various fatality review teams throughout the state.

18. Delaying access to medical records for fatality review teams interferes with their statutory responsibilities that could limit their ability to make recommendations that could prevent future deaths.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on this 6th day of February 2025.

_____
Jordan Stover
Assistant Commissioner, Consumer Services & Health Care Regulation
Indiana Department of Health