# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

State of Tennessee, et al.,

       *Plaintiffs*,

   v.

United States Department of Health and
Human Services; Xavier Becerra, in his
official capacity as Secretary of the
United States Department of Health and
Human Services; U.S. Department of
Health and Human Services Office of
Civil Rights,

       *Defendants.*

Civil Action No. 3:25-cv-00025-KAC-JEM

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>PROPOSED INTERVENOR-DEFENDANTS' MOTION FOR LEAVE TO INTERVENE</u>

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.........................................................................................................II

TABLE OF AUTHORITIES ............................................................................................... III

INTRODUCTION ................................................................................................................ 1

PROPOSED INTERVENORS ............................................................................................. 2

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ....................................................................................................................... 4

I.   Proposed Intervenors are entitled to intervention as of right. ............................................. 5

    a.   Proposed Intervenors' motion is timely.......................................................................... 5

    b.   The Proposed Intervenors have substantial legal interests in this matter. ..................... 7

        i.    *The Cities of Columbus and Madison and DFA's members are regulated by the 2024 Rule.* ....................................................................................................................... 8

        ii.   *The Cities of Columbus and Madison and DFA's members have an interest in the provider-patient relationship.* ............................................................................................. 9

        iii.  *The Cities of Columbus and Madison have an interest in the promotion of public health.*................................................................................................................................. 12

        iv.   *DFA's organizational activities demonstrate that it has a substantial legal interest in the 2024 Rule as an organization.* .................................................................................. 13

    c.   Resolution of this action would practically impair and impede Proposed Intervenors' interests. ................................................................................................................................. 15

    d.   The government representation of Proposed Intervenors' interests is inadequate. ....... 16

II.  Alternatively, this Court should permit Proposed Intervenors to intervene under Rule 24(b)........................................................................................................................................ 20

CONCLUSION..................................................................................................................... 20

1010851915

**TABLE OF AUTHORITIES**

**Cases**

*Associated Builders & Contractors v. Perry*, 16 F.3d 688 (6th Cir. 1994) ....................................7

*Blount–Hill v. Zelman*, 636 F.3d 278 (6th Cir. 2011)......................................................................6

*Blount-Hill v. Bd. of Educ. of Ohio*, 195 Fed. App'x 482 (Clay, J., concurring) .........................16

*Bradley v. Milliken*, 828 F.2d 1186 (6th Cir. 1987)........................................................................7

*Cahill v. Mem'l Heart Inst., LLC*, No. 1:23-CV-168, 2024 WL 4311648 (E.D. Tenn. Sept. 26, 2024) ...........................................................................................................9

*Clarke v. Baptist Mem'l Healthcare Corp.*, 427 F. App'x 431 (6th Cir. 2011)..............................6

*Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007) .................8, 9, 14

*Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389 (6th Cir. 1993)..................................................4, 7

*Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477 (6th Cir. 2014) ..................................................6, 7

*Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022)................................10, 14

*Equal Emp. Opportunity Comm'n v. SFI of Tenn.*, No. 14-cv-02740, 2016 WL 8312159 (W.D. Tenn. Mar. 9, 2016) ..........................................................................................5

*Equal Emp. Opportunity Comm'n v. Spitzer Mgmt., Inc.*, No. 6-cv-02337, 2009 WL 10690282 (N.D. Ohio Feb. 24, 2009) ......................................................................................6

*Grubbs v. Norris*, 870 F.2d 343 (6th Cir. 1989) ............................................................................7

*Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999).......................................................8, 13, 16, 19

*Hammonds v. Aetna Cas. & Sur. Co.*, 3 Ohio Misc. 83 (N.D. Ohio 1965) ....................................9

*Huntington Ingalls, Inc. v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor*, 70 F.4th 245 (5th Cir. 2023).....................................................9

*In re Auto. Parts Antitrust Litig., End-Payor Actions*, 33 F.4th 894 (6th Cir. 2022) .....................5

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) .............................................12

*Jansen v. City of Cincinnati*, 904 F.2d 336 (6th Cir. 1990)....................................................4, 5, 7

*League of Women Voters of Michigan v. Johnson*, 902 F.3d 572 (6th Cir. 2018).........................5

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997)...............2, 4, 7, 13, 15, 16, 19

1010851915

*NAACP v. New York*, 413 U.S. 345 (1973)..................................................................5

*Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999 (6th Cir. 2006).....................................................16, 18

*Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007).......................8

*Purnell v. Akron*, 925 F.2d 941 (6th Cir. 1991).........................................................2,4

*S. Bay Un. Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (2020) (Roberts, C.J., concurring)...........................................................................................................13

*Texas v. U.S. Dep't of Health and Human Services, et al*, No. 5:24-cv-00204-H (January 30, 2025), ECF No. 39.............................................................................17

*Texas v. U.S. Dep't of Health and Human Services,* No. 5:24-cv-204-H (N.D. Texas)...............................................................................................................16

*TJM 64, Inc. v. Harris*, 475 F. Supp. 3d 828 (W.D. Tenn. 2020).................................12

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ...........................16

*United States v. City of Detroit*, 712 F.3d 925 (6th Cir. 2013).....................................6

*United States v. Michigan*, 68 F.4th 1021 (6th Cir. 2023).............................................5

*United States v. Tennessee*, 260 F.3d 587 (6th Cir. 2001).............................................5

*W. Energy Alliance v. Zinke*, 877 F.3d 1157 (10th Cir. 2017)......................................18

*Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767 (6th Cir. 2022)..............................................................................................14, 15

**Constitutional Provisions**

Ohio Const. art. XVIII ..................................................................................................2

**Statutes**

Health Insurance Portability and Accountability Act (Pub. L. 104-191, 110 Stat. 1936) ...................................................................................................................1

5 U.S.C. § 706...............................................................................................................1

42 U.S.C. § 1320d-5 .....................................................................................................8

42 U.S.C. § 1320d-6 .....................................................................................................8

Wis. Stat. Ch. 66 ...........................................................................................................3

iv

## Regulations

45 C.F.R. § 160.103 .................................................................................................8, 9

89 Fed. Reg. 32976 (Apr. 26, 2024) .............................................1, 10, 11, 12, 13, 19

## Rules

Fed. R. Civ. P. 24 ...........................................................................................1, 2, 4, 7, 20

## Other Authorities

Amanda Becker, *How Trump's nominees could make Project 2025 a reality*,
  News from the States (Jan. 2, 2025),
  https://www.newsfromthestates.com/article/how-trump-nominees-could-
  make-project-2025-reality ........................................................................................18

Am. Med. Ass'n, *Opinion 1.1.1: Patient-Physician Relationships*, Code of
  Medical Ethics (Aug. 2022), https://code-medical-ethics.ama-
  assn.org/sites/default/files/2022-08/1.1.1%20Patient-
  physician%20relationships--background%20reports_0.pdf ...................................10

Am. Med. Ass'n, *Opinion 3.1.1: Privacy in Health Care, Code of Medical Ethics*,
  https://code-medical-ethics.ama-assn.org/sites/amacoedb/files/2024-
  12/3.1.1.pdf (last visited Feb. 6, 2025) .............................................................11, 12

Eric Cortellessa, *How Far Would Trump Go*, TIME (Apr. 30, 2024),
  https://time.com/magazine/us/6979410/may-27th-2024-vol-203-no-17-u-s/ .........18

Exec. Order No. 14076, 87 Fed. Reg. 42053 (2022) ....................................................17

Exec. Order No. 14182, 90 Fed. Reg. 8751 (2025) ......................................................17

Megan Messerly et al., *Anti-abortion groups have 2 asks. RFK Jr. is listening*,
  Politico (Nov. 20, 2024), https://www.politico.com/news/2024/11/20/anti-
  abortion-rfk-jr-00190552 .........................................................................................17

Members of Congress, Comment on Proposed HIPAA Privacy Rule To Support
  Reproductive Health Care Privacy (June 16, 2023),
  https://www.regulations.gov/comment/HHS-OCR-2023-0006-0171 ....................18

Press Release, Doctors for America Supports Executive Order Protecting Access
  to Reproductive Healthcare, Doctors for America (July 8, 2022),
  https://doctorsforamerica.org/press-release-dfa-supports-executive-order-
  protecting-reproductive-healthcare-services/ .........................................................14

Sara Cline and Geoff Mulvihill, *Arrest warrant issued for New York doctor indicted in Louisiana for prescribing abortion pill*, ASSOCIATED PRESS, January 31, 2025, https://apnews.com/article/abortion-indictment-lousiana-new-york-doctor-63ff4d9da8a9b592a7ca4ec7ba538cd3 .......................................................10

The Heritage Foundation, *Mandate for Leadership: The Conservative Promise* (2023), https://tinyurl.com/55dbtvkx ......................................................................18

Tyler Arnold, *Trump's HHS nominee Robert F. Kennedy Jr. reassures pro-life senators with policy plans*, Catholic News Agency (Dec. 18, 2024), https://www.catholicnewsagency.com/news/261111/trump-hhs-nominee-robert-kennedy-jr-reassures-pro-life-senators...................................................17, 18

U.S. Dep't of Health and Human Services, *Health Information Privacy*, https://www.hhs.gov/hipaa/for-professionals/special-topics/reproductive-health/index.html (last accessed Feb. 9, 2025) ......................................................17

Wayback Machine, *Health Information Privacy*, https://web.archive.org/web/20250124014307/https://www.hhs.gov/hipaa/for-professionals/special-topics/reproductive-health/index.html (last accessed Feb. 9, 2025) ..............................................................................................................17

7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1901 (1986)..............................................................................................2

1010851915

## INTRODUCTION

Proposed Intervenor-Defendants, the City of Columbus, Ohio ("Columbus"), the City of Madison, Wisconsin ("Madison"), and Doctors for America ("DFA") (collectively, "Proposed Intervenors") move to intervene as of right as defendants under Rule 24(a) of the Federal Rules of Civil Procedure to protect their legal interests in upholding the regulation at issue in this case.  In the alternative, Proposed Intervenors seek permissive intervention under Rule 24(b).

Plaintiffs challenge a regulation promulgated last year by the Department of Health and Human Services (the "Department") under the Health Insurance Portability and Accountability Act ("HIPAA").  Pub. L. 104-191, 110 Stat. 1936.  Plaintiffs allege this regulation exceeds the Department's statutory authority and is arbitrary and capricious, both in violation of the Administrative Procedure Act (the "APA").  5 U.S.C. § 706(2).  Plaintiffs ask this Court to declare it violative of the APA and to vacate it and set it aside.

The Department promulgated the challenged rule, the *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, to provide heightened protections preserving the confidentiality of sensitive medical information related to the provision and reception of lawful reproductive health care.  Appx. 033–123 (89 Fed. Reg. 32976-01 (Apr. 26, 2024) (codified at 45 C.F.R. pts. 160, 164)) (the "2024 Rule").  The 2024 Rule offers providers and their patients additional critical assurances and protections at a time when patients are increasingly concerned about the confidentiality of their discussions with and treatment by health care providers.

Proposed Intervenors are entitled to intervene as of right to defend the 2024 Rule.  The 2024 Rule regulates health care providers such as the public health departments of the City of Columbus and the City of Madison and, in the case of DFA, its members.  The 2024 Rule is vital for protecting patient confidentiality and, in turn, ensuring that patients trust their clinicians and that their clinicians can provide them with needed medical care.  And fostering trust and honesty

1

between clinicians and their patients is essential to overall public health. Proposed Intervenors' motion, filed at the commencement of the case, is timely; absent successful intervention, Proposed Intervenors' interests will be impaired by the relief Plaintiffs seek; and Proposed Intervenors' unique interests cannot be adequately defended by the federal government, both because the government is now unlikely to defend the 2024 Rule and because Proposed Intervenors and the government have divergent interests in this litigation. In the alternative, Proposed Intervenors should be permitted to intervene.

Rule 24 is "broadly construed in favor of potential intervenors." *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991). As the Sixth Circuit has recognized, "a lawsuit often is not merely a private fight and will have implications on those not named as parties." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997) (citing 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1901 (1986)). This is especially true in cases like this one, where Plaintiffs seek vacatur of a federal regulation—a result that will have a nationwide impact on the interests of city public health departments, medical providers, and the patients they both work to serve. Accordingly, this Court should grant Proposed Intervenors' motion to intervene.

## PROPOSED INTERVENORS

***City of Columbus, Ohio.*** Proposed Intervenor City of Columbus is a municipal corporation organized under Ohio law. *See* Ohio Const. art. XVIII. Columbus has all the powers of local self-government and home rule under the constitution and laws of the State of Ohio, which are exercised in the manner prescribed by the Charter of the City of Columbus. Columbus's public health department, Columbus Public Health, operates HIPAA-covered clinics, expends significant resources ensuring HIPAA compliance by its relevant staff, and provides a wide range of health care services on behalf of its residents, including sexual and reproductive health care. Because

2

Columbus Public Health relies on HIPAA protections to preserve trust between its clinicians and patients as well as to protect the public health, the City of Columbus opposes Plaintiffs' efforts to erode the privacy protections in the 2024 Rule.

*City of Madison, Wisconsin*.  Proposed Intervenor City of Madison is a municipal corporation organized under Wisconsin law.  *See* Wis. Stat. Ch. 66.0201–03.  Madison has all the powers of local self-government and home rule under the constitution and laws of Wisconsin, which are exercised in the manner prescribed in the ordinances of the City of Madison.  Madison's public health department, Public Health Madison and Dane County,[1] operates as a HIPAA-covered entity, expends significant resources ensuring HIPAA compliance by its relevant staff, and provides a wide variety of health care services to its residents, including sexual and reproductive health care.  Because Public Health Madison and Dane County relies on HIPAA protections to preserve trust between its clinicians and patients as well as to protect the public health, the City of Madison also opposes Plaintiffs' efforts to erode the privacy protections in the 2024 Rule.

*Doctors for America*.  Proposed Intervenor DFA is a nonpartisan, nonprofit organization comprised of more than 27,000 physicians, medical students, and other health professionals across the country, representing all medical specialties.  DFA members are subject to HIPAA, and they rely on the law's protections to help preserve the physician-patient relationship and maintain trust with their patients.  Because trust between providers and their patients is a critical component to

---

[1] The City of Madison jointly operates Public Health Madison and Dane County with Dane County.

1010851915

delivering effective care, DFA vehemently opposes Plaintiffs' efforts to erode the privacy protections in the 2024 Rule.

## LEGAL STANDARD

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention of right and requires intervention be granted where four elements are satisfied: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Michigan State AFL-CIO*, 103 F.3d at 1245 (citing *Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389, 395 (6th Cir. 1993)). The Sixth Circuit construes Rule 24 "broadly" in favor of intervenors. *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990) ("The need to settle claims among a disparate group of affected persons militates in favor of intervention.")).

Federal Rule of Civil Procedure 24(b) allows a court to permit intervention where the movant makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), taking into consideration "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

Proposed Intervenors satisfy all requirements for intervention as of right and, accordingly, are entitled to intervene. Alternatively, Proposed Intervenors should be permitted to intervene, as

their motion is timely, their defense of the 2024 Rule shares common questions of law and fact with this case, and their intervention will not delay or prejudice the existing parties' rights.

## I. Proposed Intervenors are entitled to intervention as of right.

### a. Proposed Intervenors' motion is timely.

As with the broader 24(a)(2) analysis, "[t]imeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). To evaluate timeliness, the Sixth Circuit considers:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen*, 904 F.2d at 340. On all counts relevant here, Proposed Intervenors' motion is timely.

*First*, Proposed Intervenors move to intervene while this case is still in its "infancy." *League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018). This first factor weighs against intervention only "when movants request party status during the final stages of litigation." *United States v. Michigan*, 68 F.4th 1021, 1025 (6th Cir. 2023) (citing *United States v. Tennessee*, 260 F.3d 587, 592–93 (6th Cir. 2001)). This case is nowhere near its final stage; Defendants have yet to respond to Plaintiffs' Complaint. *See In re Auto. Parts Antitrust Litig., End-Payor Actions*, 33 F.4th 894, 901 (6th Cir. 2022) (citations omitted) ("Litigation is in its final stages when the district court has already ruled on dispositive motions, closed discovery, certified classes, or held fairness hearings that lead to settlement approval."). Motions to intervene in cases at later stages than this one are consistently found timely. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. SFI of Tenn.*, No. 14-cv-02740, 2016 WL 8312159, at *2 (W.D. Tenn. Mar. 9, 2016) (finding intervention timely seventeen months after filing and where

5

deadlines for written discovery and depositions had not yet passed); *Equal Emp. Opportunity Comm'n v. Spitzer Mgmt., Inc.*, No. 6-cv-02337, 2009 WL 10690282, at *2 (N.D. Ohio Feb. 24, 2009) (finding a motion timely where discovery was underway and trial was months away). This suit's minimal progression weighs in favor of timeliness.

*Second,* Proposed Intervenors' motion is also timely considering the "importance of the legal interests asserted." *Clarke v. Baptist Mem'l Healthcare Corp.*, 427 F. App'x 431, 436 (6th Cir. 2011) (citing *Blount–Hill v. Zelman*, 636 F.3d 278, 285 (6th Cir. 2011)); *accord Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 491 (6th Cir. 2014). Here, Proposed Intervenors' intended defense of the 2024 Rule protects their legitimate and important interests as entities regulated by the 2024 Rule; supports their interests in upholding principles of provider-patient privacy; enables them to carry out their missions of protecting public health; and ensures that their compliance resources have been properly spent. *See infra* Section I(b). Proposed Intervenors seek to join this case in its still early stages because the federal government—obligated to consider a diverse array of interests in defense of this rule—cannot adequately represent the more specific interests of Proposed Intervenors in this litigation, even if they do not abandon defense of the rule entirely. *See infra* Section I(d).

*Third,* Proposed Intervenors acted promptly to intervene after realizing their interest in the litigation. Rather than taking a "wait and see" approach and moving to intervene at a later stage of the case, *United States v. City of Detroit*, 712 F.3d 925, 931 (6th Cir. 2013), Proposed Intervenors are filing their motion just over three weeks after the case was filed and before any responsive pleading or a scheduling order was put in place. They do so because statements and actions of the new administration have made it apparent that the federal government is likely to cease defending the challenged regulation and will not adequately represent Proposed Intervenors'

interests moving forward, and because Proposed Intervenors' interests are not the same as the Department's even if the Department elects to defend the 2024 Rule. *See infra* Section I(d).

*Fourth*, intervention at this time will cause no prejudice to the existing parties. Intervention will not cause delay because Proposed Intervenors are filing before any deadlines for responsive pleadings. *See Jansen*, 904 F.2d at 341 (finding no prejudice to original parties where the intervening party sought to file opposition to summary judgment within the existing schedule, which prevented delay). Indeed, "original parties' interests are better served by having all relevant interests represented" at this stage "because piecemeal litigation is likely to be avoided." *Jansen*, 904 F.2d at 341.

*Fifth*, there are no "unusual circumstances" in this matter weighing against applicants in their motion to intervene. *Id.* at 340. However, the "total balance of timeliness," *Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 494 (6th Cir. 2014)—appropriately considered under this prong—weighs in favor of the Proposed Intervenors, who have moved swiftly at the commencement of the case to protect their important interests in this case.

### b. The Proposed Intervenors have substantial legal interests in this matter.

To intervene under Rule 24(a)(2), an intervenor must have "substantial legal interest" in the proceeding. *Cuyahoga Valley*, 6 F.3d at 395. Such interest need not be a "specific legal or equitable interest." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245, 1247 (6th Cir. 1997). Put differently, Proposed Intervenors' interests must be "significantly protectable." *Id.* at 1254 (quoting *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989)). Whether an interest suffices to satisfy this requirement "is to be construed liberally," *Michigan State AFL-CIO*, 103 F.3d at 1245 (quoting *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)), as this requirement is less stringent than that of Article III standing, *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994).

7

Organizational intervenors, like DFA, may seek to intervene to protect the interests of their organization, and they may also seek to intervene to assert their members' interests. *See Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 781 (6th Cir. 2007) (finding that an organization could have substantial legal interest in litigation concerning a law that regulates "the organization or its members."). DFA seeks to do both.

### i. The Cities of Columbus and Madison and DFA's members are regulated by the 2024 Rule.

Parties, such as Columbus and Madison and DFA's members, have an interest in a suit challenging a law that regulates them. *See Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 783 (6th Cir. 2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 401 (6th Cir. 1999)). The Sixth Circuit has found that "public interest groups who are regulated by the new law, or, similarly, whose members are affected by the law, may likely have an ongoing legal interest in its enforcement after it is enacted." *Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007) (citing *Grutter*, 188 F.3d at 401 (finding that proposed intervenors, who were applicants to University of Michigan, had a substantial legal interest in the school's admissions process)). Whether an applicant to intervene is an entity regulated by a challenged statute is a factor that is "particularly significant" in this analysis and weighs in favor of the applicants' interest in the proceedings. *Id.* at 345.

DFA's members include providers who themselves are "covered entities" subject to the 2024 Rule. 45 C.F.R. § 160.103; Appx. 008 (Petrin Decl. ¶ 10). DFA's members are subject to both civil and criminal liability for violating HIPAA and its rules, including the 2024 Rule. *See* 42 U.S.C. § 1320d-5; 42 U.S.C. § 1320d-6(b). They may also be subject to professional discipline for violating the patient privacy rules, including the 2024 Rule, of the hospitals and practices in which they work. *See* Appx. 008 (Petrin Decl. ¶ 11). And they expend significant time and money

8

on HIPAA compliance and training.  *See* Appx. 009 (Petrin Decl. ¶ 14); Appx. 015 (Oller Decl. ¶ 14).

Similarly, Columbus and Madison operate public health departments that are "covered entities" subject to the 2024 Rule.  45 C.F.R. § 160.103; Appx. 020 (Johnson Decl. ¶ 15); Appx. 028 (Heinrich Decl. ¶ 15).  Columbus Public Health and Public Health Madison and Dane County operate a number of outpatient clinics and treat thousands of patients each year.  Appx. 019 (Johnson Decl. ¶ 10); Appx. 027 (Heinrich Decl. ¶ 10).  They too devote staff time and resources to HIPAA compliance and training.  *See* Appx. 020–21 (Johnson Decl. ¶ 16–19); Appx. 028 (Heinrich Decl. ¶ 16).  Columbus Public Health has already devoted staff time toward implementing the 2024 Rule.  Appx. 022 (Johnson Decl. ¶ 25).

That the public health departments of Columbus and Madison and DFA's members are regulated by the 2024 Rule means that they are both "directly affected by the challenged policy" and will be "directly affected by the outcome of the litigation."  *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 783 (6th Cir. 2007).  No further inquiry is needed.

### ii.     The Cities of Columbus and Madison and DFA's members have an interest in the provider-patient relationship.

Proposed Intervenors' interests go beyond their status as regulated parties.  They also have an interest in the challenged 2024 Rule because of their interest in maintaining and strengthening the provider-patient relationship by promoting trust between patients and providers, an interest that has been recognized by courts.  *Cahill v. Mem'l Heart Inst., LLC*, No. 1:23-CV-168, 2024 WL 4311648, at *14 (E.D. Tenn. Sept. 26, 2024) ("The policy of the law is to promote a full and free disclosure of all information by the patient to his treating physician . . . .") (quoting *Hammonds v. Aetna Cas. & Sur. Co.*, 3 Ohio Misc. 83 (N.D. Ohio 1965)); *see also Huntington Ingalls, Inc. v. Director, Office of Workers' Compensation Programs*, *United States Dep't of Labor*, 70 F.4th 245,

9

251 (5th Cir. 2023) ("The doctor-patient relationship requires trust and confidentiality to facilitate the candid disclosure of sensitive health information.") (citation omitted).[2]

DFA members know first-hand how difficult it can be to build a relationship with a patient and how quickly a relationship can be fractured. Appx. 009 (Petrin Decl. ¶ 13); *see* Appx. 014–15 (Oller Decl. ¶¶ 9–12, 15). Patients have a "reasonable expectation" that the medical information they share with their providers will be used only to treat them. Appx. 042 (89 Fed. Reg. 32985 (Apr. 26, 2024)). If patients believe their sensitive health information will be used by law enforcement for non-health care purposes, it endangers the very relationships that DFA members and all health care providers work so hard to build. *See* Appx. 010 (Petrin Decl. ¶ 16); Appx. 014 (Oller Decl. ¶ 12); Appx. 041 (89 Fed. Reg. 32984 (Apr. 26, 2024). This risk has only increased since the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), as patients find some health care banned, and providers and patients may face investigations into the legal treatment they provide and receive. Appx. 010 (Petrin Decl. ¶ 16); Appx. 014 (Oller Decl. ¶ 12); Appx. 041 (89 Fed. Reg. 32984 (Apr. 26, 2024)). Indeed, Plaintiff state Louisiana recently filed an indictment against a New York doctor for prescribing abortion care, which is legal in the state of New York. Appx. 124–129 (Sara Cline and Geoff Mulvihill, *Arrest warrant issued for New York doctor indicted in Louisiana for prescribing abortion pill*, Associated Press, January 31, 2025, https://apnews.com/article/abortion-indictment-lousiana-new-york-doctor-63ff4d9da8a9b592a7ca4ec7ba538cd3).

---

[2] For centuries, the provider-patient relationship has been at the heart of medical practice. This relationship has an ethical foundation and is built on confidentiality, trust, and honesty. *See* Appx. 130–136 (Am. Med. Ass'n, *Opinion 1.1.1: Patient-Physician Relationships*, Code of Medical Ethics (Aug. 2022)), https://code-medical-ethics.ama-assn.org/sites/default/files/2022-08/1.1.1%20Patient-physician%20relationships--background%20reports_0.pdf.

10

Patient trust is especially vital to the Columbus and Madison public health departments, which serve as providers of last resort in their communities. Appx. 021 (Johnson Decl. ¶ 20); Appx. 027 (Heinrich Decl. ¶ 12). Many of the patients that Columbus Public Health and Public Health Madison and Dane County treat come from historically marginalized populations. Appx. 021 (Johnson Decl. ¶ 20); Appx. 029–30 (Heinrich Decl. ¶ 25). "[M]edical mistrust—especially in communities of color and other communities that have been marginalized or negatively affected by historical and current health care disparities—can create damaging and chilling effects on individuals' willingness to seek appropriate and lawful health care for medical conditions that can worsen without treatment." Appx. 042 (89 Fed. Reg. 32985 (Apr. 26, 2024)). Patients seek out care from Columbus Public Health and Public Health Madison and Dane County instead of a family physician to preserve their anonymity and avoid stigma that can be associated with particular statuses (e.g., sex work) or health conditions (e.g., sexually transmitted infections). *See* Appx. 021 (Johnson Decl. ¶ 21); Appx. 029 (Heinrich Decl. ¶¶ 23–24). Patients' trust that their personal health information will remain confidential is paramount.

Preserving this relationship of trust between providers and their patients is an aim of the 2024 Rule. *See* Appx. 035 (89 Fed. Reg. 32978 (Apr. 26, 2024)) (specifying that the 2024 Rule was necessary to "continue to protect privacy in a manner that promotes trust between individuals and health care providers" in light of the "changing legal landscape").

Strong privacy protections on patient medical information and the trust they engender between patients and their providers, in turn, allow Columbus Public Health, Public Health Madison and Dane County, and DFA's members to provide competent care and comport with their ethical obligations to do so. *See* Appx. 009 (Petrin Decl. ¶ 13); Appx. 014–15 (Oller Decl. ¶¶ 9, 11–13); Appx. 021 (Johnson Decl. ¶ 19); Appx. 028 (Heinrich Decl. ¶ 17); Appx. 137 (Am. Med.

11

Ass'n, *Opinion 3.1.1: Privacy in Health Care, Code of Medical Ethics*, https://code-medical-ethics.ama-assn.org/sites/amacoedb/files/2024-12/3.1.1.pdf (last visited Feb. 06, 2025)). The provision of effective care depends on the sharing of sensitive health information, which will only happen when patients trust that their information will be kept confidential. Appx. 009 (Petrin Decl. ¶ 13); Appx. 014–15 (Oller Decl. ¶¶ 9–13); Appx. 021 (Johnson Decl. ¶ 19); Appx. 028–29 (Heinrich Decl. ¶ 20); *see* Appx. 042 (89 Fed. Reg. 32985 (Apr. 26, 2024)). When patients fear sharing their medical history or other relevant sensitive information with their providers, it risks misdiagnosis or mistreatment and puts patients' lives at risk. Put simply, "high-quality health care cannot be attained without patient candor." Appx. 042 (89 Fed. Reg. 32985 (Apr. 26, 2024)).

The 2024 Rule protects against that. More fundamentally, the provision of competent care is only possible where patients actually seek such care. Without robust privacy protections, patients may be afraid to seek certain health care because they are concerned about how their sensitive medical information will be used or shared. Appx. 010 (Petrin Decl. ¶ 17); Appx. 014 (Oller Decl.¶ 11); Appx. 022–23 (Johnson Decl. ¶ 26); Appx. 030–31 (Heinrich Decl. ¶ 28).

### iii. The Cities of Columbus and Madison have an interest in the promotion of public health.

Columbus and Madison additionally have an interest in promoting the public health of their communities. Courts have long recognized the interest of local governmental bodies to protect public health. *See, e.g.*, *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905) ("Upon the principle of self-defense, of paramount necessity, a community has the right to protect itself against an epidemic of disease which threatens the safety of its members."). In recent years, "[c]ourts from across the country have reaffirmed the historical principle that states and municipalities are granted broad powers to combat the spread of dangerous communicable diseases." *TJM 64, Inc. v. Harris*, 475 F. Supp. 3d 828, 834 (W.D. Tenn. 2020) (citation omitted);

12

*accord S. Bay Un. Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613 (2020) (Mem.) (Roberts, C.J., concurring).

Protecting individual privacy while promoting public health is an express purpose of the 2024 Rule. Robust privacy protections engender accurate reporting and can help identify concerning health trends. Put differently, "[b]arriers that undermine the willingness of individuals to seek health care in a timely manner or to provide complete and accurate health information to their health care providers undermine the overall objective of public health." Appx. 042 (89 Fed. Reg. 32985 (Apr. 26, 2024)).

Columbus Public Health and Public Health Madison and Dane County are the public health authorities for their jurisdictions, responsible not just for treating individual patients but also for preventing disease and improving the overall health of their residents as a whole. *See* Appx. 018 (Johnson Decl. ¶ 8); Appx. 026 (Heinrich Decl. ¶ 3); Appx. 042–43 (89 Fed. Reg. 32985 (Apr. 26, 2024)). The cities' ability to identify and address concerning health trends depends, in part, on the willingness of patients to seek care and be honest with public health department providers. Appx. 022 (Johnson Decl. ¶ 23); Appx. 030 (Heinrich Decl. ¶ 26). The cities' interest in vindicating their public health mandates gives them "substantial" interest in this litigation. *See Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

> #### iv. *DFA's organizational activities demonstrate that it has a substantial legal interest in the 2024 Rule as an organization.*

The Sixth Circuit has found that, in conjunction with its interest as an organization that represents regulated entities, an organization's history of advocacy related to a statutory scheme gives rise to a substantial legal interest in the matter. *See Michigan State AFL-CIO*, 103 F.3d at 1245–47; *Grutter*, 188 F.3d at 401. DFA has such a history.

13

DFA works to advocate on behalf of providers for accessible, equitable health care at the local, state, and federal levels.  Specifically, following the *Dobbs* decision, DFA responded to the now-rescinded Executive Order directing agencies to protect reproductive health care by asking the federal government to take additional steps to protect patient privacy in the provision of sexual and reproductive health care through its authority under HIPAA.  Appx. 196 (Press Release, Doctors for America Supports Executive Order Protecting Access to Reproductive Healthcare, Doctors for America (July 8, 2022), https://doctorsforamerica.org/press-release-dfa-supports-executive-order-protecting-reproductive-healthcare-services/).  DFA generally works to increase the physician voice in health policy decisions.  *See* Appx. 007–08 (Petrin Decl. ¶¶ 7–8).  In addition to advocating for legislative and regulatory change, DFA provides resources and trainings, including HIPAA-specific resources, for its members on legal and policy issues.  *See* Appx. 007–08 (Petrin Decl. ¶¶ 7–8).  In 2022, DFA co-founded the Reproductive Health Coalition—a group of more than a hundred health professional organizations—specifically focused on protecting access to reproductive care.  Appx. 008 (Petrin Decl. ¶ 9).

If the 2024 Rule were to fall, DFA would be required to expend significant resources advocating for increased privacy protections elsewhere (for example, at the state level) and educating and training its members on the reworked legal landscape.  *See* Appx. 010 (Petrin Decl. ¶ 17).  This interest goes beyond a purely "ideological" interest in the lawsuit and amounts to a substantial legal interest.  *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 773 (6th Cir. 2022) (quoting *Coal. to Defend Affirmative Action*, 501 F.3d at 782).

### c. Resolution of this action would practically impair and impede Proposed Intervenors' interests.

An intervenor must demonstrate that the disposition of the case *may* impair or impede its ability to protect its interests. *Michigan State AFL-CIO*, 103 F.3d at 1247 ("To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.") (citation omitted). "This burden is minimal." *Id.* "The rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest." *Wineries*, 41 F.4th at 774.

It takes little imagination to see how a partial or complete resolution of the case in favor of Plaintiffs would impair Proposed Intervenors' interests. If the 2024 Rule is vacated, Proposed Intervenors will spend time and money to reassess their obligations and allay confusion that would likely result. And patients' trust will be compromised, harming the provider-patient relationship, endangering Proposed Intervenors' ability to provide effective care to their patients, and undermining the public health missions of Columbus and Madison.

If Plaintiffs are afforded even part of their broad-sweeping requests for relief, Proposed Intervenors will be bound by the judgment. There will be no way to appeal or—depending on the grounds upon which this Court would hypothetically rule—advocate for the agency to revive the rule. And if the Proposed Intervenors are prevented from joining this litigation, they will have no other recourse—such as affirmative litigation—through which to vindicate their interests. *See Wineries*, 41 F.4th at 774 ("[P]otential stare decisis effects can be a sufficient basis for finding an impairment of interest." (quoting *Mich. State AFL-CIO*, 103 F.3d at 1247)). Precluding Proposed Intervenors from involvement in this litigation would significantly impede and impair their abilities to protect the interests they have outlined.

1010851915

### d. The government representation of Proposed Intervenors' interests is inadequate.

To make the "minimal" showing required for this factor, *Michigan State AFL-CIO*, 103 F.3d at 1247 (quoting *Linton*, 973 F.2d at 1319), Proposed Intervenors need only demonstrate that "there is a *potential* for inadequate representation," *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999); *see also Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (applicants need only show that "that representation of his interest 'may be' inadequate.") (citation omitted). Proposed Intervenors more than meet their burden here.

Although adequacy of representation is presumed where the putative intervenor has the "same ultimate objective" as a party to the lawsuit, *Michigan*, 424 F.3d at 443–44, that presumption may be overcome where, for example, the existing defendant may not "make all of the prospective intervenor's arguments," *Michigan AFL-CIO*, 103 F.3d at 1247, or where the existing defendant "has an incentive to disregard possible defenses that the applicant would like to present," *Blount-Hill v. Bd. of Educ. of Ohio*, 195 Fed. App'x 482, 489 (Clay, J., concurring) (citing *Grutter*, 188 F.3d at 400). And where an intervenor's interests may "potentially diverge" from those of an existing party, the Sixth Circuit has suggested that the presumption does not even apply. *See Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1008 (6th Cir. 2006).

The federal government is not entitled to any presumption of adequacy here. To start, Proposed Intervenors have reason to believe that the Department will imminently abandon its defense of the rules. In parallel litigation challenging the same 2024 Rule under the same legal claims Plaintiffs articulate here—*Texas v. U.S. Dep't of Health and Human Services,* No. 5:24-cv-204-H (N.D. Texas)—the government has already moved to hold the case in abeyance so that it can reevaluate the positions of the prior administration. *See* Appx. 138–40 (Motion to Hold

Deadlines in Abeyance, *Texas v. U.S. Dep't of Health and Human Services, et al*, No. 5:24-cv-00204-H, (January 30, 2025), ECF No. 39). President Trump has also issued an Executive Order, Appx. 141–43 (Exec. Order No. 14182, 90 Fed. Reg. 8751 (2025)), specifically rescinding a Biden-era Order, Appx. 144–46 (Exec. Order No. 14076, 87 Fed. Reg. 42053, 42054 (2022)), directing the Department to consider actions, including under HIPAA, "to strengthen the protection of sensitive information related to reproductive healthcare services and bolster patient-provider confidentiality," *id.* Additionally, the Department's website, which as recently as January 24, 2025, included a page describing the 2024 Rule and providing guidance to covered entities and individuals about the 2024 Rule, now displays a "page not found" message. *Compare* Appx. 147 (U.S. Dep't of Health and Human Services, *Health Information Privacy*, https://www.hhs.gov/hipaa/for-professionals/special-topics/reproductive-health/index.html (last accessed Feb. 9, 2025)) (displaying the text "Page Not Found," "[t]he page may have been moved" or "no longer exists"), *with* Appx. 149 (Wayback Machine, *Health Information Privacy*, https://web.archive.org/web/20250124014307/https://www.hhs.gov/hipaa/for-professionals/special-topics/reproductive-health/index.html (last accessed Feb. 9, 2025)) (the organization "Internet Archive," which stores historical versions of webpages, captured the same HHS.gov url as it existed on January 24, 2025, when it displayed information about the 2024 Rule).

Presumptive Department Secretary, Robert F. Kennedy, Jr., has indicated his willingness to rescind Department regulations related to reproductive health care, including the 2024 Rule. *See* Appx. 154 (Megan Messerly et al., *Anti-abortion groups have 2 asks. RFK Jr. is listening*, Politico (Nov. 20, 2024), https://www.politico.com/news/2024/11/20/anti-abortion-rfk-jr-00190552); Appx. 159 (Tyler Arnold, *Trump's HHS nominee Robert F. Kennedy Jr. reassures pro-life senators with policy plans*, Catholic News Agency (Dec. 18, 2024),

https://www.catholicnewsagency.com/news/261111/trump-hhs-nominee-robert-kennedy-jr-reassures-pro-life-senators) (noting that Kennedy has told Senators that he "will back certain pro-life policies if the Senate confirms him," and that abortion should go "back to the states").[3] Further, key figures tasked with planning the new administration's agenda have opposed similar Department efforts to protect reproductive health information. Appx. 164 (The Heritage Foundation, *Mandate for Leadership: The Conservative Promise* (2023), https://tinyurl.com/55dbtvkx).[4] If, as expected, the Department imminently abandons its defense of the 2024 Rule, Proposed Intervenors and the existing defendants will not share the same ultimate goal of maintaining it. At the very least, these actions and statements "raise[] 'the possibility of divergence of interest' or a 'shift' during litigation," *W. Energy Alliance v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017) (citation omitted), sufficient to overcome the presumption too, *see Blackwell*, 467 F.3d at 1008.

---

[3] President Trump and his administration have demonstrated that they believe the federal government should not take any actions to protect access to abortion. *See* Appx. 159–63 (Arnold, *supra*) (quoting Senator Tommy Tuberville as saying, "Basically, [Kennedy] and President Trump have sat down and talked about it and both of them came to an agreement," and "Roe v. Wade is gone, [abortion has] gone back to the states"). Within the past year, President Trump has indicated that he "would let red states monitor women's pregnancies," a sentiment completely diametric to the 2024 Rule's intent and Proposed Intervenors' interests. Appx. 169 (Eric Cortellessa, *How Far Would Trump Go*, TIME (Apr. 30, 2024), https://time.com/magazine/us/6979410/may-27th-2024-vol-203-no-17-u-s/). Vice President Vance opposed the new rule from its inception, submitting a comment that makes many of the same arguments that Plaintiffs do here. *See* Appx. 179–89 (Members of Congress, Comment on Proposed HIPAA Privacy Rule To Support Reproductive Health Care Privacy (June 16, 2023), https://www.regulations.gov/comment/HHS-OCR-2023-0006-0171).

[4] Although President Trump has endeavored to distance himself from Project 2025, he has since picked "major architects" of the blueprint for key posts in his administration. Appx. 190 (Amanda Becker, *How Trump's nominees could make Project 2025 a reality*, News from the States (Jan. 2, 2025), https://www.newsfromthestates.com/article/how-trump-nominees-could-make-project-2025-reality).

18

Other evidence likewise raises the possibility of interest divergence. Proposed Intervenors have outlined their specific interests in this case. *See* Section I(b) *supra*. Even if it were to defend the 2024 Rule, the Department's numerous interests—in balancing patient privacy with the public interest in using health information and law enforcement needs, defending the integrity of its rulemaking process, managing its relationship with the states, and implementing the agenda of a new administration—are both broader and distinct. These competing interests are something the Department itself recognized in the 2024 Rule. *See, e.g.*, Appx. 035 (89 Fed. Reg. 32978 (Apr. 26, 2024)) ("This final rule balances the interests of society in obtaining PHI for non-health care purposes with the interests of the individual, the Federal Government, and society . . . ."). These more extensive interests that the Department was obliged to consider at the rulemaking stage may lead to divergent legal strategies, such as a willingness to settle, agree to an injunction limited in scope, or not appeal relief ordered against it. The reality that government agencies are obligated to consider diverse interests is a reason why the Sixth Circuit "has declined to endorse" a presumption of adequacy when a governmental entity is a party. *Grutter*, 188 F.3d at 400 (finding that the District Court had erred by applying the standard articulated by the Fifth Circuit, that "a stronger showing of inadequacy is required when a governmental agency is involved as the existing defendant.") (citation omitted).

Proposed Intervenors are "not required to show that the representation will in fact be inadequate," *Michigan State AFL-CIO*, 103 F.3d at 1247, but the Department's actions in the related case and the public statements from the new administration members certainly have "established the possibility of inadequate representation." *Grutter*, 188 F.3d at 401.

19

## II. Alternatively, this Court should permit Proposed Intervenors to intervene under Rule 24(b).

Federal Rule of Civil Procedure 24(b) provides that a court may permit intervention where an intervenor makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," taking into consideration "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). Proposed Intervenors should be permitted to intervene permissively if they are not entitled to under Rule 24(a)(2).

First, as explained above, Proposed Intervenors motion is timely. *See* Section I(a) *supra*. Proposed Intervenors move to intervene promptly, before the matter proceeds substantively, to protect their interests. Second, Proposed Intervenors seek to take up the position (defending the 2024 Rule) and arguments that they believe the federal government will shortly abandon, and Proposed Intervenors' claims and defenses do not just share a common question of law or fact with the main action—they are practically identical. If the incoming administration does not abandon its defense of the 2024 Rule, Proposed Intervenors' specific interests still easily satisfy this requirement. *See* Section I(b) *supra*. Lastly, intervention here would not cause any delay or prejudice, as this litigation is in its nascent stages. *See* Section I(a) *supra*.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that this Court grant their motion for leave to intervene under Rule 24(a), or, in the alternative, Rule 24(b).

1010851915

Date:   February 10, 2025

Respectfully submitted,
/s/ *Tricia R. Herzfeld*
Tricia R. Herzfeld
HERZFELD, SUETHOLZ, GASTEL, LENISKI
AND WALL, P.L.L.C
BPR Number 026014
223 Rosa L. Parks Avenue
Suite 300
Nashville, Tennessee 37203
(615) 800-6225 (phone)
tricia@hsglawgroup.com
*Counsel to Intervenor-Defendants*

-and-

Shannon Rose Selden – *Pro Hac Vice Pending*
Zachary H. Saltzman – *Pro Hac Vice Pending*
Adam Aukland Peck – *Pro Hac Vice Pending*
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000 (phone)
(212) 909-6836 (fax)
srselden@debevoise.com
zhsaltzm@debevoise.com
aauklandpeck@debevoise.com

*Counsel to Intervenor-Defendants*

-and-

Anna A. Moody – *Pro Hac Vice Pending*
Gabriel A. Kohan – *Pro Hac Vice Pending*
Suzanne Zakaria – *Pro Hac Vice Pending*
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue NW
Washington, DC 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)
amoody@debevoise.com
gakohan@debevoise.com
szakaria@debevoise.com

*Counsel to Intervenor-Defendants*

Carrie Y. Flaxman – *Pro Hac Vice Forthcoming*
Madeline H. Gitomer – *Pro Hac Vice Forthcoming*
Emma R. Leibowitz – *Pro Hac Vice Forthcoming*
DEMOCRACY FORWARD
P.O. Box 34553
Washington, DC 20043
(202) 448-9090 (phone)
cflaxman@democracyforward.org
mgitomer@democracyforward.org
eleibowitz@democracyforward.org

*Counsel to Intervenor-Defendants*

-and-

Jonathan Miller – *Pro Hac Vice Pending*
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, California 94609
(510) 214-6960 (phone)
jon@publicrightsproject.org

*Counsel to City of Columbus and City of Madison*

21

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2025, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

*/s/ Tricia R. Herzfeld*
Tricia R. Herzfeld