# EXHIBIT Q

Declaration of Charles Hardin, Privacy Officer for the Arkansas Department of Health

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEEE
KNOXVILLE DIVISION

STATES OF TENNESSEE, ALABAMA, )
ARKANSAS, GEORGIA, IDAHO, INDIANA, )
IOWA, LOUISIANA, MONTANA, )
NEBRASKA, NORTH DAKOTA, OHIO, )
SOUTH CAROLINA, SOUTH DAKOTA, and )
WEST VIRGINIA, )
)
    *Plaintiffs*, )
) Civil Action No. 25-cv-00025
v. )
)
U.S. DEPARTMENT OF HEALTH AND )
HUMAN SERVICES; XAVIER BECERRA, in )
his official capacity as Secretary of Health and )
Human Services; and U.S. DEPARTMENT OF )
HEALTH AND HUMAN SERVICES OFFICE )
OF CIVIL RIGHTS, )
)
    *Defendants.*

## DECLARATION OF CHARLES HARDIN

Pursuant to 28 U.S.C. § 1746, I, CHARLES HARDIN, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this declaration.

2. I serve as the Privacy Officer for the Arkansas Department of Health. As the Privacy Officer, I ensure agency compliance with the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"), develop, implement, and update privacy policies in accordance with current laws, investigate privacy complaints, address patient privacy inquiries, and provide staff training on the HIPAA Privacy

1

Rule. Because the Department of Health is also a public health authority, I work with our public health officials on privacy requirements affecting their ability to perform public health activities.

3. As part of my responsibilities, I help coordinate the Department of Health's release of protected health information in compliance with HIPAA. For example, if the Department of Health receives a civil investigatory demand from an agency investigating public health matters, I help ensure that information is disclosed only as permitted by HIPAA and its accompanying regulations.

4. I have reviewed the Department of Health and Human Services' *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32,976 (Apr. 26, 2024) (the "Final Rule"), which took effect on June 25, 2024, although compliance with the Final Rule generally was not required until December 23, 2024, *id.* at 32,976.

5. The Final Rule has created compliance costs for the Department of Health that are on-going.

6. The Final Rule creates new restrictions on the disclosure and use of any patient information related to "reproductive health care," which it broadly defines as "health care … that affects the health of an individual in all matters relating to the reproductive system and to its functions and processes." 45 C.F.R. § 160.103.

7. When the Department of Health requests reproductive health care records as part of their health care function, other healthcare providers have been reluctant to provide records, and some have refused, despite the request being for treatment purposes and the Department of Health, as a covered entity, referring the patients to the provider. The Department of Health has an increased financial burden because staff now navigate these unnecessary administrative hurdles to

patient care put in place due to the Final Rule. These hurdles also create delays which prevent patients from receiving timely care.

8. Under the Final Rule, when the Department of Health receives a request for information, it now must consider whether that information is sought for a prohibited purpose, like "[t]o conduct a criminal, civil, or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care." *Id.* § 164.502(a)(5)(iii)(A)(1). Making this evaluation involves resolving many difficult legal questions, like whether certain health care is "authorized by Federal law … regardless of the state in which it is provided." *Id.* § 164.502(a)(5)(iii)(B). And if requested information is *potentially related* to "reproductive health care" information, the Department of Health must request an attestation from the investigator required by the Final Rule. *Id.* § 164.509. The Department of Health then must determine whether that attestation is valid.

9. The Department of Health has worked with the state's child protective services to provide health care to children who are in the state's custody. The Final Rule has created greater confusion over when a child protective service worker is an investigator, triggering the greater protections, or when they are acting as the child's personal representative in a *in loco parentis* role and therefore allowed access to the child's protected health information. This is complicated further because HIPAA requires covered entities to "treat a personal representative as the individual." *Id.* § 164.502(g)(1). HIPAA also requires a covered entity to disclose protected health information to the individual. *Id.* 164.502(a)(2)(i). This conflict with the Final Rule has led to delays in treatment and significant compliance burdens as the fact-based analysis must accompany every request, even one as simple as making an appointment.

10. Despite assurances made by the Department of Health and Human Services in the publication of the Final Rule, the Department of Health's public health activity has also suffered significant compliance burdens. Public health requests have been routinely denied by other covered entities. Public health officials have been denied records for reportable diseases such as Alpha-Gal and Lyme disease, neither of which are related to reproductive care. To receive the records, public health officials have been required to complete an attestation. Because each covered entity has interpreted the information required by the attestation differently, the public health officials have an increased burden to determine what information is required for each request they make, despite the Department of Health being a covered entity with its own requirements.

11. Thus, the Final Rule prompted the Department of Health to re-evaluate its processes for disclosing information and train its staff on new disclosure procedures. Now each request for information triggers a series of evaluations—*e.g.*, is reproductive health care information potentially implicated? If so, has the investigator provided an attestation? If so, is that attestation valid, meaning that the Department of Health can reasonably determine that the information is not sought for a prohibited purpose? Each step of this pre-disclosure process takes time, resources, and personnel. Thus, the Final Rule imposes significant compliance costs on the Department of Health and other state agencies that respond to public health investigators' requests for information.

Date: March 27, 2025

By: *[signature]*
Charles Hardin
HIPAA Privacy Officer
Arkansas Department of Health

4