# EXHIBIT R

Declaration of Tammera Harrelson, Deputy Attorney General and Director for the Medicaid Fraud Control Unit in the Office of the Arkansas Attorney General

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEEE
# KNOXVILLE DIVISION

STATES OF TENNESSEE, ALABAMA, )
ARKANSAS, GEORGIA, IDAHO, INDIANA, )
IOWA, LOUISIANA, MONTANA, )
NEBRASKA, NORTH DAKOTA, OHIO, )
SOUTH CAROLINA, SOUTH DAKOTA, and )
WEST VIRGINIA, )
)
)
*Plaintiffs*, )
) Civil Action No. 25-cv-00025
v. )
)
U.S. DEPARTMENT OF HEALTH AND )
HUMAN SERVICES; XAVIER BECERRA, in )
his official capacity as Secretary of Health and )
Human Services; and U.S. DEPARTMENT OF )
HEALTH AND HUMAN SERVICES OFFICE )
OF CIVIL RIGHTS, )
)
*Defendants*.

## DECLARATION OF TAMMERA HARRELSON

Pursuant to 28 U.S.C. § 1746, I, Tammera Harrelson, duly affirm under penalty of perjury as follows:

1) I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this declaration.

2) I serve as Deputy Attorney General and Director for the Medicaid Fraud Control Unit (MFCU) in the Office of the Arkansas Attorney General. The MFCU is responsible for investigating and prosecuting, both criminally and civilly, Medicaid fraud, False Claims, and the abuse, neglect, and exploitation of residents in long term care facilities or board and care facilities with a Medicaid nexus.

1

3) As part of my responsibilities, I regularly review criminal subpoenas and civil investigative demands ("CIDs") issued by the MFCU team to entities covered under the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"), seeking protected health information ("PHI") to investigate Medicaid Fraud, False Claims, abuse, neglect, and exploitation. The MFCU is authorized to issue CIDs and criminal subpoenas pursuant to Ark. Code Ann. § 20-77-904 and Ark. Code Ann. § 25-16-705.

4) The MFCU routinely requests medical records during an investigation for civil or criminal fraud, as well as records involved in the abuse, neglect, or exploitation of vulnerable patients. At the beginning of an investigation, the investigators and agents may not have any idea of the breadth and depth of misconduct. We often receive a general complaint of wrongdoing and will not know the specifics until we review the medical records.

5) Obtaining medical records is a first step in any investigation the MFCU initiates. For Medicaid Fraud or False Claims, the medical records must be reviewed against the data to determine whether the billing was correct. For abuse and neglect claims, records reveal any injuries and the extent of those injuries. Even with financial exploitation claims, the MFCU investigators and agents must use medical records to help determine whether the victim was physically or mentally compromised.

6) I have reviewed the Department of Health and Human Services' *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32,976 (Apr. 26, 2024) (the "Final Rule"), which took effect on June 25, 2024, although compliance generally was not required until December 23, 2024, *id.* at 32,976.

7) The Final Rule has created compliance costs and barriers to investigation, impeding our investigation of Medicaid Fraud, False Claims, and abuse, neglect, and exploitation in Arkansas.

8) Before the Final Rule, the MFCU could issue CIDs and subpoenas without considering whether the information sought "potentially related" to "reproductive health care." Since the Final Rule, however, the MFCU investigators and agents are trapped between the vague requirements of the Final Rule and the ability to perform their missions.

9) The Final Rule now prohibits covered entities from disclosing PHI where it will be used for any of the following activities:

> (1) To conduct a criminal, civil or administrative investigation into any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care.
>
> (2) To impose criminal, civil, or administrative liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care.
>
> (3) To identify any person for any purpose described in paragraphs (a)(5)(iii)(A)(1) or (2) of this section.

45 C.F.R. § 164.502(a)(5)(iii)(A)(1)-(3).

10) If the PHI will be used for the above activities, the covered entity cannot disclose the requested information if the entity "reasonably determine[s]" that the "reproductive health care" at issue is either (1) "lawful under the law of the state in which such health care is provided under the circumstances in which it is provided," or (2) "protected, required, or authorized by Federal law, including the United States Constitution, under the circumstances in which such health care is provided, regardless of the state in which it is provided." *Id.* § 164.502(a)(5)(iii)(B)(1)-(2).

3

11) In making that assessment, the Final Rule creates a presumption that reproductive health care provided by another person is lawful under (a)(5)(iii)(B)(1) or (2) and so not subject to investigation by a State—"unless the covered entity or business associate has" either:

> (1) Actual knowledge that the reproductive health care was not lawful under the circumstances in which it was provided[, or];
>
> (2) Factual information supplied by the person requesting the use or disclosure of protected health information that demonstrates a substantial factual basis that the reproductive health care was not lawful under the specific circumstances in which it was provided.

*Id.* § 164.502(a)(5)(iii)(C).

12) Covered entities that receive a request for PHI are making these determinations, including assessments of state and federal laws, for themselves. If the covered entity determines that any of the conditions barring disclosure exist, it may deny the request. The Final Rule does not provide explicit recourse for the requesting entity.

13) Under the Final Rule, covered entities must also require attestations with a request for PHI that is "potentially related" to "reproductive health care" data. *Id.* § 164.509(a). Such attestations are required under the Final Rule even when regulatory conditions on disclosures for law enforcement purposes are otherwise met. *See id.* § 164.512(f)(1)-(6). Investigators and agents now must thoroughly consider the bases and potential ends of their investigation before requesting HIPAA-protected information from a covered entity with a particular focus on "reproductive health care." If there is any risk that "reproductive health care" information will be subsumed in the requested data, investigators are to consult internally to consider, among other things, whether their request can be narrowed and whether the information is sought for a prohibited purpose. Because of the Final Rule's broad, vague standards, sometimes these internal discussions require

4

consultation with legal counsel. And even once an investigator is satisfied that he can provide an attestation, he must complete the form and provide it to the covered entity.

14) The Final Rule places the power to assess the validity of an attestation entirely with the covered entity to which the request is made. So, even after making an attestation it does not necessarily follow that the requesting party will receive the requested information. This means that in some cases the entity under investigation will have a veto on the MFCU's ability to obtain records necessary for investigations.

15) Rather than making individualized determinations, some covered entities are demanding an attestation in response to all subpoenas or CIDs sent by the MFCU, regardless of the circumstances. As of the end of January 2025, the MFCU had already received five denials for criminal subpoenas. The entity in each instance insisted that it would not release the medical documents without an attestation.

16) Hence, the investigators and agents are left with poor options by the Final Rule, especially in cases where they do not know whether the investigation will involve something that will run afoul of the Final Rule. For example, they could refuse to send an attestation and try to get a court of competent jurisdiction to enforce the subpoena, but that process takes time, resources, and personnel. Further, considering that the Arkansas Statute of Limitations in certain cases runs within one year, the MFCU could easily lose cases due to the delay.

17) Ultimately, the Final Rule has already complicated my team's duty and ability to investigate Medicaid Fraud, False Claims, and abuse, neglect, and exploitation of vulnerable citizens. For those reasons, the Final Rule is impacting the public health and safety of the State of Arkansas due to the fact that it is delaying, impeding, and deterring investigations.

By: _Tammera Harrelson_      Dated: 4-2-25
Tammera Harrelson, Deputy Attorney General
Director, Medicaid Fraud Control Unit
Office of the Arkansas Attorney General

6

Case 3:25-cv-00025-KAC-JEM     Document 88-2     Filed 04/03/25     Page 7 of 7
PageID #: 993