# EXHIBIT V

Declaration of Kelsey McKnight, Assistant Section Chief of Licensing Enforcement of the State of Indiana's Office of the Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| STATES OF TENNESSEE, ALABAMA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, LOUISIANA, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, and WEST VIRGINIA, <br><br>    *Plaintiffs*, <br><br>v. <br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; and U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE OF CIVIL RIGHTS, <br><br>    *Defendants*. | Civil Action No. 25-cv-00025 |

## DECLARATION OF KELSEY MCKNIGHT

Pursuant to 28 U.S.C. § 1746, I, Kelsey E. McKnight, in my official capacity, duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this declaration.

2. I serve as the Assistant Section Chief of Licensing Enforcement of the State of Indiana's Office of the Attorney General. The Office of the Attorney General's Consumer Protection Division (the Division) is empowered to receive, investigate, and prosecute complaints concerning regulated professional occupations in Indiana. Ind. Code § 25-1-7-2. Indiana law dictates that the Division's authority to protect consumers is to be liberally construed and applied to promote the Division's purpose and policies for protecting consumers. Ind. Code § 24-5-0.5-1.

3. The Division is responsible for investigating consumer complaints for approximately 57,642 licensees.

4. In 2024 alone, the Division investigated approximately 1,700 consumer complaints related to medical, nursing, and physician assistant licenses alone.

5. This authority includes the authority to "investigate any written complaint against a license" and "to subpoena witnesses and to send for and compel the production of books, records, papers, and documents for the furtherance of any investigation under this chapter." Ind. Code § 25-1-7-5(b)(4)–(5).

6. The Division exercises that authority by subpoenaing books, records, papers, and documents from various health organizations including hospitals, medical service centers, and individual medical professionals.

7. I currently supervise 16 investigators who are responsible for investigating consumer complaints that have been filed against medical and professional licensees, and individuals engaging in the unlicensed practice of regulated professions. At any given time, each investigator is responsible for a caseload of approximately 100–150 active investigations.

8. I also supervise 3 case screeners, who are responsible for completing a preliminary review of all consumer complaints that have been filed with Licensing Enforcement. The case screeners ensure that accurate information has been collected, and if additional information is needed, will correspond with the persons that filed a consumer complaint. At any given time, the case screeners maintain a review queue of approximately 50–100 consumer complaints.

9. Because of their obligations under state and federal law, *see, e.g.*, Ind. Code § 25-1-7-5(b)(5); 42 C.F.R. § 489.53(a)(18), health care facilities in the past immediately complied with survey requirements, including by providing requested records.

10. I am aware of the Department of Health and Human Services' *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32,976 (Apr. 26, 2024) (the "Final Rule"), which took effect on June 25, 2024, although compliance with the Final Rule generally was not required until December 23, 2024, *id.* at 32,976.

11. The Final Rule is currently causing significant additional work for the Division and hindering its investigations.

12. Before the rule, investigators would mail and/or email an opening letter with an attached consumer complaint to the individual that was the target of an active investigation. This letter asks that the target person please provide a response to the consumer complaint within 20–30 days. While these responses are not required, they are quite often imperative in determining what next steps, if any, need to be taken in the investigation.

13. Additionally, if the investigator determined it was necessary after their initial review of the file, a *subpoena duces tecum* would be sent to the target of the investigation or a medical facility where treatment was provided requesting that certain relevant medical records be produced.

14. Now, because of the rule, certain healthcare providers require a release of information ("ROI") completed by the patient or their guardian, be included with the opening letter and consumer complaint so that the investigator may obtain a response to the consumer complaint. An ROI is not a requirement of filing a consumer complaint, so this additional step requires that an investigator work with the patient or patient's guardian to obtain the ROI, and then send, and in many cases, resend, the opening letter and consumer complaint to the investigation's target or their counsel.

15. While this change in process does not seem significant, based on the size of each investigator's caseload and when taken in the cumulative, it has not only increased the length of time an investigation may remain open, but it has caused investigators to expend time and resources on collecting paperwork rather than making substantive steps in their investigations. This is not only to the detriment of the investigators, but to the target of the investigation as an investigation may remain open longer than necessary, placing undue stress on the medical professional.

16. Similarly, it is now required that all *subpoena duces tecum* include a completed attestation. Again, this change in process has a cumulative effect in the investigative process. For example, on more than one occasion, a completed attestation and *subpoena duces tecum* had been sent, but because the medical facility/healthcare provider required the attestation to be completed on their own form, the investigator had to complete the new attestation and reissue the *subpoena duces tecum*. This again has shifted investigators' valuable time to collecting and signing paperwork.

17. In addition to the extra time and resources that have been expended because of this change in process, in at least one circumstance, an attorney of the Division was reluctant to have an investigator sign an attestation because of the attorney's interpretation of the Final Rule. In general, there is an uneasiness amongst staff about the Final Rule and what, if any, criminal or civil liability they may be exposed to whilst making proper, necessary steps during their investigations.

18. As stated previously herein, a ROI has become a requirement by some providers for a response to a consumer complaint be provided to an investigator. There have been consumer complaints that contain concerning allegations, but because of several reasons – the complainant's

failure to communicate, inaccurate address/email address, etc. – the investigator was unable to obtain an ROI. Often an investigator can properly complete an investigation without the response, but in other circumstances a response is often crucial in determining whether there has been a standard of care violation. Medical records paint a picture, but a response is quite often the interpretation to that picture, and without that interpretation, an investigation could be completely stalled or closed.

19. The Division has at least ten outstanding subpoenas against health care providers in Indiana, all of whom have declined to provide documents based on the Final Rule. The Division has filed two petitions to enforce in Indiana state court, which were removed to federal court. Neither matter has yet been resolved. These petitions are filed under seal because the Division's investigations are confidential, pursuant to Ind. Code § 25-1-7-10(a).

20. The Final Rule is frustrating the Division's duty and ability to investigate consumer complaints against health care providers. Because of the Final Rule, the Division's investigations are consuming more resources than they did before the Final Rule's effective date. And the Final Rule is actively thwarting pressing investigations. For those reasons, the Final Rule is impacting the public health and safety of the State of Indiana because it is delaying, impeding, and deterring viable investigations.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on this 3rd day of April 2025.

Kelsey E. McKnight
Assistant Section Chief, Licensing Enforcement
Indiana Office of the Attorney General