IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

STATE OF TENNESSEE, *et al.*,

    *Plaintiffs*,

v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, *et al.*,

    *Defendants*.

No. 3:25-cv-25

**DEFENDANTS' OPPOSITION TO PROPOSED INTERVENOR-DEFENDANTS'
MOTION FOR LEAVE TO INTERVENE**

    A coalition of two Midwest cities and a nonprofit organization have moved to intervene in this lawsuit, seeking to defend the rule that plaintiffs challenge, *HIPAA Privacy Rule to Support Reproductive Health Care Privacy*, 89 Fed. Reg. 32976 (Apr. 26, 2024) ("Rule"). But while these proposed intervenors support the Rule, they have not satisfied the requirements for intervention, whether as of right or permissively. As defendants' motion to dismiss explains, *see infra*, this Court lacks jurisdiction over this case, a threshold barrier to intervention. Moreover, intervention of right is limited to cases where a non-party has such a direct stake in the dispute that it is a real party in interest, a showing the proposed intervenors have not made here. Nor is permissive intervention warranted, as the proposed intervenors do not seek to advance a claim or defense common to those of the parties; rather, their desire to present arguments in support of the Rule at most justifies their participation as amicus curiae. The Court should therefore deny the motion to intervene.

**BACKGROUND**

    **1.** Earlier this year, a group of fifteen states filed this Administrative Procedure Act ("APA") suit to challenge a Department of Health and Human Services ("HHS") rule that imposes additional

1

restrictions on certain uses and disclosures of health information protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The states claim that the Rule unlawfully interferes with their authority to investigate violations of state law and is otherwise arbitrary and capricious. *See* Compl. ¶¶ 135–46, ECF No. 1. Two weeks later, the states moved for summary judgment and preliminary relief on all their claims. *See* Pls.' Mot. for Summ. J. & Prelim. Relief, ECF No. 25. Defendants opposed that motion and cross-moved to dismiss this case for lack of subject-matter jurisdiction on the grounds that the states lack Article III standing to challenge the Rule. *See* Defs.' Opp. to Pls.' Mot. for Summ. J. & Prelim. Relief & Cross-MTD ("MTD"), ECF No. 65.

**2.** Shortly after this case commenced, the Doctors for America ("DFA") and the cities of Columbus, Ohio, and Madison, Wisconsin, jointly moved to intervene as defendants. *See* Mem. in Supp. of Proposed Intervenor-Defs.' Mot. for Leave to Intervene ("Mot."), ECF No. 32. And though not parties to this lawsuit, they submitted a brief opposing the states' motion for summary judgment and preliminary relief. *See* Mem. of Law of Proposed Intervenor-Defs. in Opp to Pls' Mot. for Summ. J. & Prelim. Inj., ECF No. 64.

**ARGUMENT**

**I.      This Court's lack of jurisdiction precludes intervention.**

As a threshold matter, the proposed intervenors cannot intervene in a case over which this Court lacks jurisdiction. "[A]n existing suit within the Court's jurisdiction" is a "prerequisite" to intervention, *Horn v. Eltra Corp.*, 686 F.2d 439, 440 (6th Cir. 1982) (citation omitted)—an "ancillary proceeding" that cannot "create jurisdiction where none exists," *Vill. of Oakwood v. State Bank & Trust Co.*, 481 F.3d 364, 367 (6th Cir. 2007). Because no jurisdiction exists here, where the states lack Article III standing, *see* MTD at 8–12, the Court "simply has no power to decide [the] motion to intervene," *see Vill. of Oakwood*, 481 F.3d at 367, and should therefore dismiss this case without resolving the merits of the proposed intervenors' motion, *see id.* ("In the absence of jurisdiction over the existing suit, a

2

Case 3:25-cv-00025-KAC-JEM      Document 90      Filed 04/14/25      Page 2 of 11      PageID #: 1020

district court['s] … only option is to dismiss.").[1]

## II. The proposed intervenors are not entitled to intervene as of right.

Even if this Court had jurisdiction, the proposed intervenors have not established a right to intervene. Federal Rule of Civil Procedure 24(a)(2) allows an entity who is not a party to a lawsuit to intervene as of right only if, upon timely motion, it shows that (i) it has a significant legal interest in the lawsuit's subject matter, (ii) its ability to protect that interest would be impaired absent intervention, and (iii) its interest is inadequately represented by the parties. *Grainger v. Ottawa Cnty.*, 90 F.4th 507, 513 (6th Cir. 2024).[2] An aspiring intervenor bears the burden of establishing each requirement, and failure to satisfy any one of them precludes intervention of right. *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

None of the proposed intervenors' asserted interests confer a right to intervene. To have such a right, an interest must be direct, substantial, and legally protectable, *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989); *United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 499–501 (6th Cir. 1993), such that the aspiring intervenor "is a real party in interest in … the proceeding," *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005) (citation omitted). The scattershot interests the proposed intervenors assert come nowhere close to meeting that standard.

*First,* the proposed intervenors cannot establish a sufficient interest in this litigation based merely on the fact that the Rule regulates certain DFA members and the health departments of Columbus and Madison, *contra* Mot. 8–9, and the cases they cite say nothing to the contrary. Take *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007), and *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007). In both cases, the Sixth Circuit held that

---

[1] At a minimum, the Court should resolve defendants' motion to dismiss before addressing the proposed intervenors' motion.
[2] The proposed intervenors do not contend that a federal statute grants them an "unconditional right to intervene," so Rule 24(a)(1) is inapplicable.

3

organizations that had advocated for a ballot initiative did not have a substantial interest in a lawsuit challenging the initiative's implementation, and thus had no right to intervene. *See Granholm*, 501 F.3d at 780–83; *Cox*, 487 F.3d at 344–46. While the proposed intervenors (at 8) latch onto *dicta* from both cases that suggests that an organization that is regulated by a law, or whose members are affected by a law, "*may*" have an interest in the law's continued enforcement, *see Granholm*, 501 F.3d at 782 (emphasis added) (quoting *Cox*, 487 F.3d at 345), neither case supports the proposition that the proposed intervenors advance—*i.e.*, that being regulated or affected by a law is alone sufficient to create a substantial interest in litigation challenging the law.

Nor does *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999). There, the Sixth Circuit held that minority students who had applied or intended to apply for admission to a university, along with an organization representing such students, had a right to intervene in litigation challenging the constitutionality of the university's race-conscious admissions policy. *Id.* at 396–97. The court reached that conclusion based on its finding that the students' interest in obtaining admission to the university would be *adversely affected* if the university were enjoined from employing its race-conscious admissions policy, not because the students were merely subject to the challenged policy. *Id.* at 398–400. The proposed intervenors have thus cited no authority adopting their position that Rule 24(a)(2)'s interest requirement is satisfied whenever an aspiring intervenor is regulated by a challenged law.

And unlike in *Grutter*, the proposed intervenors identify no adverse regulatory consequences that Columbus, Madison, or any DFA members would face if the Rule were vacated. While they vaguely assert that these entities devote "time and resources to HIPAA compliance and training," *see* Mot. 8–9, they do not contend—much less submit any evidence showing—that the Rule's vacatur would require that they expend *additional* time or resources beyond what they would otherwise devote to HIPAA compliance. Nor is it relevant that, as a general matter, a covered entity may face liability for violating HIPAA's requirements, *see id.* at 8, as the proposed intervenors do not suggest that

4

vacating the Rule—thus lifting its requirements—would *increase* the likelihood that any covered entity would be held liable for violating HIPAA.

**Second,** relying on *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997), DFA suggests that its "history of advocacy" in the health care field gives it a substantial interest in this litigation. *See* Mot. 13–14. But *Miller*'s reasoning is inapplicable here. There, a state chapter of the Chamber of Commerce ("Chamber") sought to intervene as a defendant in a lawsuit challenging campaign-finance legislation that applied existing expenditure restrictions to labor unions—legislation that the Chamber helped draft. *Miller*, 103 F.3d at 1244; *see also Mich. St. AFL-CIO v. Miller*, 891 F. Supp. 1210, 1216 (E.D. Mich. 1995), *rev'd*, 103 F.3d 1240 (6th Cir. 1997). Though the Sixth Circuit thought it was a "close" call, the court found that the Chamber had shown a sufficient interest to support its intervention because the Chamber was (i) "a vital participant in the political process that resulted" in the adoption of the challenge legislation, (ii) "a repeat player in Campaign Finance Act litigation," (iii) "a significant party" that is "adverse to" the plaintiff "in the political process surrounding" the state's regulation of campaign finance, and (iv) "an entity also regulated by at least three of the four statutory provisions" that were challenged. *Miller*, 103 F.3d at 1246–47; *accord Cox*, 487 F.3d at 344–45 (noting that *Miller*'s interest analysis turned on these "four significant factors"). But *none* of those factors are present here. DFA doesn't claim that it played a serious role in the Rule's promulgation, citing (at 14) only a single press release that the organization issued in July 2022—nearly two years before the Rule's publication—that encouraged "the Administration to consider" taking various actions relating to reproductive health care services. *See* App'x in Supp. of Intervenor-Defs.' Mot. to Intervene ("App'x") at 196, ECF 32-1. Nor does DFA claim to routinely litigate cases concerning access to or use of reproductive health information or that the Rule directly regulates it. DFA's reliance on *Miller* is thus misplaced.

**Third,** DFA cannot establish a direct and substantial interest in this litigation based on the

5

threadbare assertion that it would need to expend resources on advocacy and education if the Rule were vacated. *Contra* Mot. 14. For one, DFA cites no authority supporting the proposition that voluntarily expending resources to advance an organization's "policy goals is sufficient to establish a legally protectable interest for purposes of Rule 24(a)(2)." *See Def. Distributed v. U.S. Dep't of State*, 2018 WL 3614221, at *3 (W.D. Tex. July 27, 2018); *cf. FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 370 (2024) ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing …."). But either way, vaguely alluding to the possibility of "expend[ing] some undefined amount of … resources if the Rule [were] vacated" gets DFA nowhere. *See Cigar Ass'n of Am. v. FDA*, 323 F.R.D. 54, 62–63 (D.D.C.); *see also, e.g.*, *Tarpon Towers II, LLC v. City of Sylvania*, 586 F. Supp. 3d 755 (N.D. Ohio Jan. 10, 2022) (requiring "more" than "speculative" and "unsubstantiated" assertions to satisfy Rule 24(a)(2)'s interest requirement). As the Sixth Circuit has repeatedly explained, whether an aspiring intervenor has a direct and substantial interest depends on a fact-intensive inquiry. *United States v. Tennessee*, 260 F.3d 587, 595 (6th Cir. 2001) (citing several cases in accord). And yet, DFA submits no *facts* to support its claim that it would need to expend resources if the Rule were upended, instead citing only a declarant's conclusory assertion to that effect. *See* Mot. 14 (citing App'x 10, Decl. of Dr. Christine Petrin ¶ 17). Indeed, DFA never explains, *e.g.*, what specific resources it actually intends to expend on any relevant advocacy and education, much less whether any of those resources would otherwise be conserved or go to other purposes if the Rule were upheld. *Cf. All. for Hippocratic Med.*, 602 U.S. at 395 (rejecting theory that "standing exists when an organization diverts its resources in response to a defendant's actions," noting that "relaxing regulation" of a drug imposed no relevant "impediment to the medical associations' advocacy"). And it's hard to imagine what resources DFA would actually need to expend to educate its members on the pre-Rule "legal landscape," as it claims it would need to do, *see* Mot. 14, given that the Rule's compliance date was less than four months ago. *See, e.g.*, *Liebert v. Wisc. Elections Comm'n*, 345 F.R.D. 169, 173 (W.D. Wisc. 2023)

6

("[The proposed intervenors] say that they will need to expend additional resources to educate Republican voters if the witness requirement is invalidated, but they point to no evidence … that such education will be needed if plaintiffs prevail."). Regardless, without sufficient facts, the Court has no way to meaningfully evaluate whether DFA's asserted interest is real and not merely theoretical. *See, e.g., Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 420 (E.D. Ky. Oct. 30, 2015) ("[T]he inquiry into whether the interest advanced is sufficiently substantial for intervention is very fact-specific, but the proposed intervenors have not provided support for their contention that their generalized interest … is sufficient to allow them to intervene as of right …." (internal citation omitted)).

***Finally*,** the proposed intervenors offer no clear explanation how the disposition of this lawsuit will have any appreciable, real-world effect on their ability to "promot[e] the public health" or "promot[e] trust between patients and [health care] providers." *See* Mot. 9–13. Although the proposed intervenors try to draw a link between this litigation and their asserted interests, any such connection is too abstract and attenuated to establish the direct, substantial, and legally protectable interest needed to confer a right to intervene. *See, e.g., Sierra Club v. McCarthy*, 308 F.R.D. 9, 11 (D.D.C. 2015) ("[A] legally protectable interest" must be so "direct and immediate … that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."); *Vt. All. for Ethical Healthcare, Inc. v. Hoser*, 2016 WL 7015717, at *1–2 (D. Vt. Dec. 1, 2016) ("A concern in the abstract … is insufficient" to establish "a direct, substantial and legally protectable interest in the lawsuit."); *Doe v. Horne*, 2024 WL 4119371, at *2 (9th Cir. Sept. 9, 2024) (rejecting "abstract and indirect" interests under Rule 24(a)(2)); *See United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 839 (8th Cir. 2009) ("[An aspiring intervenor] must … demonstrate that the subject matter of the action affects its interests in a direct rather than tangential way.").

\* \* \*

In sum, because the proposed intervenors have not identified a direct, substantial, and legally

7

protectable interest that could be impaired absent their intervention, they lack a right to intervene.

## III. The proposed intervenors have not justified permissive intervention.

Permissive intervention should likewise be denied. Upon timely motion, a court may permit intervention under Rule 24(b) where the movant has a "claim or defense that shares with the main action a common question of law or fact" and where other factors, including whether intervention would "unduly delay or prejudice" the court's adjudication of the parties' rights, weigh in favor of intervention. *Faizer v. Tenn. Valley Auth.*, 2025 WL 409792, at *2 (E.D. Tenn. Feb. 5, 2025) (citations omitted). But even when these requirements are met, the court retains discretion to deny intervention. *Birchfield v. Deutsche Bank Nat'l Trust Co.*, 22019 WL 7161623, at *2 (E.D. Tenn. July 8, 2019).

The proposed intervenors have not satisfied Rule 24(b)'s principal requirement, as they do not seek to advance a claim or defense that shares a common legal or factual question with those of the parties. "The words 'claim or defense" in Rule 24(b) "manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law[]suit." *Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring, joined by Burger, C.J., and Rehnquist, J.); *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (adopting the *Diamond* concurrence's interpretation of "claims or defenses" in interpreting those same words in Rule 23(a)(3)). That interpretation is "confirmed by Rule 24(c)'s requirement that a person desiring to intervene serve a motion … 'accompanied by *a pleading* setting forth *the claim or defense* for which intervention is sought.'" *Diamond*, 476 U.S. at 76 (O'Connor, J., concurring, joined by Burger, C.J., and Rehnquist, J.) (quoting Fed. R. Civ. P. 24(c)). So, to permissively intervene, one must have "a legal claim or defense … founded upon" an "actual, present interest that would permit" an aspiring intervenor "*to sue* or *be sued*" in a lawsuit "sharing common questions of law or fact with those at issue in this litigation." *Id.* (emphasis added). But the proposed intervenors have no such claim or defense. And while they seek to intervene as defendants in this lawsuit, they do not suggest that the states could bring any APA

8

claims challenging the Rule against them, nor is it clear what defenses the proposed intervenors could assert to such claims. Rather, it appears the proposed intervenors simply wish to assert various legal theories in support of the Rule's validity. *See* Mot. 20 ("Proposed Intervenors seek to take up … arguments" "defending the 2024 Rule …."). But mere "legal theories are not 'claims or defenses' …, as envisioned by Rule 24(b)." *United States v. Apple, Inc.*, 2012 WL 4513541, at *2 (S.D.N.Y. Oct. 2, 2012); *accord, e.g.*, *DeOtte v. Azar*, 332 F.R.D. 173, 186–87 (N.D. Tex. 2019) (denying permissive intervention because the aspiring intervenor-defendant "simply ha[d] no claim or defense," as interpreted in the *Diamond* concurrence).[3]

Other factors also counsel against permissive intervention. First, there are no underlying factual issues that the proposed intervenors could help to develop in this APA matter, which raises pure questions of law that would need to be resolved on the basis of the administrative record if the Court were to reach the merits. *See, e.g.*, *Britto v. ATF*, 2023 WL 11957195, at *5 (N.D. Tex. Apr. 14, 2023) (denying permissive intervention where the proposed intervenor could not "contribute to the development of [any] underlying factual issues" in an APA case raising pure questions of law). And to the extent the proposed intervenors wish to be heard on any of the issues raised in this litigation, they are free to seek this Court's leave to participate as amicus curiae, a request that defendants would not oppose. *See, e.g.*, *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475–76 (6th Cir. 2000) ("[T]he concerns of an entity seeking intervention can be presented with complete sufficiency through [amicus curiae] participation."); *Bradley v. Milliken*, 828 F.2d 1186, 1194 (6th Cir. 1987); *Louisiana v. Burgum*, --- F.4th ---, 2025 WL 971729, *4 (5th Cir. Apr. 1, 2025) ("[W]here the movants express a unique view offered

---

[3] *See also, e.g.*, *United States v. Microsoft Corp.*, 2002 WL 319366, at *2 (D.D.C. Feb. 28, 2002) (denying permissive intervention because the court could find no "assertion by [the aspiring intervenor] of a cognizable claim fitting the parameters of Rule 24(b)(2)," as interpreted in the *Diamond* concurrence) (cleaned up)); *Choice Fashion, Inc. v. ATF*, 2009 WL 1658047, at *2 (E.D. Mich. June 10, 2009) (same); *First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*, 2011 WL 13221046, at *3 (N.D. Ga. Nov. 1, 2011) (same); *Laube v. Campbell*, 215 F.R.D. 655, 659 (M.D. Ala. 2003) (same).

9

by neither party that they want heard, the proper procedure is to move to appear as *amici curiae*, not to move to intervene." (cleaned up)).

## CONCLUSION

The Court should deny the proposed intervenors' motion to intervene.

Dated: April 14, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On April 14, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Tennessee, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                */s/ Jody D. Lowenstein*
                                                JODY D. LOWENSTEIN
                                                Trial Attorney
                                                U.S. Department of Justice